OPINION
{¶ 1} Samuel Moreland appeals from the dismissal of his petition for post conviction relief. In State v. Moreland (Jan. 7, 2000), Montgomery App. No. 17557, this court in large measure affirmed the dismissal of Moreland's petition, but we did remand the case to the trial court for an evidentiary hearing on Moreland's claim that his jury waiver was not knowingly, voluntarily, or intelligently made.
 {¶ 2} We stated:
 {¶ 3} ". . this claim must be remanded to the trial court for a hearing. At that hearing, it must be determined whether Moreland was aware that by waiving a jury he would lose the benefit of a two-tiered sentencing process, and, if not, whether, as he claims, he would not have waived a jury if he had understood this aspect of the waiver. On both of these issues, Moreland has the burden of proof.
 "* * * {¶ 4} "On remand, the question of whether Moreland was aware of the consequence of his waiver is limited to the specific issue of whether he was aware that he would forego the opportunity, present in a jury trial, to require two independent fact finders to determine that the death penalty is warranted before that penalty could be imposed and whether he would have waived the right had he been so informed."
 I. {¶ 5} From the formulation of the issues to be determined on remand, if Moreland failed to satisfy his burden of proof on the first issue, i.e., whether he understood the two-tiered sentencing process available in a jury trial, the second issue need not be reached.
 {¶ 6} The trial court concluded, after the evidentiary hearing, that Moreland had failed to prove that he did not know of the two-tiered sentencing process available in a jury trial. Although correctly observing that Moreland's failure to sustain his burden on the first issue was dispositive, the trial court nevertheless gratuitously found that Moreland would have waived a jury, regardless of whether he was aware of the two-tiered sentencing process.
 {¶ 7} The trial court also rejected Moreland's request that its decision be held in abeyance pending an evaluation for current competency.
 II. {¶ 8} On appeal, Moreland advances three assignments of error.
 {¶ 9} "1. The lower court erred when it denied Mr. Moreland relief on the grounds that his jury waiver was constitutionally, statutorily, (and) procedurally flawed."
 {¶ 10} The trial court's determination that Moreland failed to prove that he was unaware of the two-tiered sentencing process before he waived a jury trial was based primarily on the testimony of Dennis Lieberman, Moreland's co-counsel at trial. Moreland testified but, as the trial court observed, his testimony was not helpful as it was not for the most part directed to the issues to be considered.
 {¶ 11} Lieberman testified as follows. He was admitted to practice in 1978 and was associated with Louis Hoffman, who was Moreland's lead counsel. Lieberman had had considerable experience in criminal defense although this was his first capital case. (He was appointed to represent Moreland November 18, 1985). Explaining to clients the procedures involved with jury waivers was part of Lieberman's standard operating procedure. He met the state supreme court standards for co-counsel in capital cases and was familiar with the current death penalty statutes, including the provisions for a separate penalty phase, for a jury recommendation of death or of an alternative sentence, and for the trial judge to either impose a jury recommended death sentence or reject the recommendation in favor of an alternative sentence. Lieberman also knew that in a jury waived case, a three-judge panel would determine punishment. Although Lieberman could not recall precisely what he told Moreland, he testified that he believed he would have explained "the entire procedure" to Moreland, and that their discussions about jury waiver occurred over a period of "probably days, if not weeks." Lieberman testified that Moreland signed the waiver in open court, on the record (which cannot now be located) before the presiding judge, Carl D. Kessler (now deceased). He testified that whether to waive a jury was up to the client, informed by his professional advice, and that he would not permit a client to sign a waiver if "he didn't . . . know what was going on. . . ." Lieberman testified that he did not recall Moreland having "any difficulties" that would have prevented him from understanding the effect of waiving trial by jury, nor Moreland ever questioning why a jury wasn't hearing his case. In response to questions by the trial court, Lieberman testified that his and Hoffman's advice to waive a jury was based on their desire to avoid the death penalty, that Moreland understood this objective, that the attorneys believed that this objective had a better chance of success with a three-judge panel, and that Moreland bought into this strategy. Lieberman could not recall whether the in-court execution of the jury waiver occurred April 11, 1986 — the date it was filed at 4:02 p.m. — or at an earlier date. (He said the jury waiver was contingent on the selection of two "acceptable" judges to complete the panel with Judge Kessler, and would have been withdrawn if two acceptable judges could not be seated on the panel. Judge Kessler may have obtained the waiver prior to final selection of the other two panel members).
 A. {¶ 12} Moreland argues that the requirements of R.C. 2945.05
were not followed and that reversal is necessary, citing Statev. Pless (1996), 74 Ohio St.3d 333. That statute, in its entirety, reads as follows:
 {¶ 13} "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: `I . . . . . . . ., defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.'
 {¶ 14} "Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial."
 {¶ 15} We reject this argument. The jury waiver filed in this case April 11, 1986, was signed by Moreland. The waiver language is identical to the language in the statute except "a Panel of Three Judges" is substituted in place of "a Judge." Lieberman recalled that Moreland executed the waiver in open court before Judge Kessler. The problem in Pless — a failure to file the jury waiver and make it part of the record — is not present here. Although it is unfortunate that a transcript of the waiver proceeding cannot be found, this is not a basis for reversing Moreland's conviction given the other evidence of record. Although not essential to the disposition of this argument, we do note that Pless also holds that "failure to comply with R.C.2945.05 may be remedied only in a direct appeal from a criminal conviction." Syllabus, par. 2.
 B. {¶ 16} Moreland points to several items of evidence in an attempt to demonstrate that his waiver was invalid. The jury waiver does not show date of execution or contain witness signatures. There is no transcript of the jury waiver proceeding. Moreland's 1991 affidavit detailed his counsels' deficient advice and asserted he would not have waived a jury had he been properly advised. His counsel had stated in an affidavit that he was unstable and communication with him was frustrating. Moreland was subjected to a sodium pentothal interview April 11, 1986, between 12:05 and 2:35 p.m. A newspaper article stated Moreland executed the waiver April 11, 1986. An affidavit executed by Hoffman and Lieberman did not mention what Moreland claims is critical information concerning jury waiver. This was Lieberman's first capital case, and Hoffman could not recall if he had tried a capital case since 1981, when the statutes governing capital punishment had been revised significantly. Lieberman's testimony on cross-examination by the state, upon which the trial court relied in large part, was irrelevant "habit and routine" evidence. Defense counsel wanted to try the case to a three-judge panel if an acceptable panel could be seated.
 {¶ 17} The hearing on remand occurred September 20, 2002. Moreland was indicted in late 1985, and Hoffman and Lieberman were appointed to represent Moreland November 14, 1985. Moreland's jury waiver was filed April 11, 1986, so that there was a passage of more than sixteen years between the remand hearing in 2002 and Hoffman's and Lieberman's discussions with Moreland that culminated in his jury waiver.
 {¶ 18} We believe Moreland mischaracterizes Lieberman's testimony as merely irrelevant habit and routine testimony. Lieberman did not testify that he did not recall advising Moreland about the two-tiered sentencing process that he gave up by waiving a jury. Rather, Lieberman testified that he could not recall precisely what he said to Moreland, but that he was personally familiar with the two-tiered sentencing procedure, and that he believed he would have explained the entire procedure to Moreland. From our review of the evidence, we conclude that the trial court could have reasonably concluded that Lieberman explained to Moreland, and that Moreland understood, the two-tiered sentencing process that he would give up by waiving a jury. In any event, taking into account that Moreland's testimony barely touched upon the first issue on remand — and was expressly disbelieved in large part by the trial court — the trial court reasonably determined that Moreland did not carry his burden to prove he was unaware of the two-tiered sentencing procedure.
 {¶ 19} We also believe that Lieberman's testimony supports the trial court's gratuitous determination of the second issue on remand, i.e., that Moreland failed to carry his burden to prove that — assuming he was unaware of the two-tier sentencing process — had he known, he would not have waived a jury trial. Lieberman testified that he and Hoffman — given the gruesome evidence of the five murders Moreland was accused of — believed the best strategy for avoiding the death penalty was trial before an "acceptable," presumably dispassionate, panel of judges rather than trial to a jury. Lieberman testified that Moreland bought into this strategy. Having credited this testimony and largely rejected Moreland's testimony, the trial court properly concluded that Moreland had failed to carry his burden of proof on the second remanded issue.
 {¶ 20} In our judgment, the items of evidence relied upon by Moreland do not affect the propriety of the trial court's determination of the remanded issues. The facts that the waiver does not show a date of signature or witness signatures, that there is no transcript of the waiver proceeding, and that a newspaper article reports the waiver occurred April 11, are at most matters affecting the weight of the evidence. This is also true of Hoffman's and Lieberman's affidavits and their lack of capital case defense work under the 1981 revision of Ohio's death penalty statutes. It is obvious that Moreland did not prepare the affidavit that he signed in 1991, and the trial court acted within its discretion in crediting Lieberman's testimony over that affidavit.
 {¶ 21} Moreland claims that his waiver is invalid because he underwent a sodium pentothal interview around midday on April 11, 1986, the same day the jury waiver was filed. The trial court concluded that this should not affect its determination that Moreland had failed to carry his burden of proof on the remanded issues. As the trial court observed, it is not certain that the waiver was even executed on April 11, and Lieberman had testified that he would not have allowed the waiver proceeding to continue had he thought Moreland was incapable of understanding what was going on.
 {¶ 22} Taking into account this evidence, and the lack of any evidence that the sodium pentothal actually affected Moreland's judgment, we believe the trial court properly disposed of this contention. We reject Moreland's contention in the alternative that this matter must be remanded for yet another hearing on whether the sodium pentothal interview influenced his judgment. Moreland clearly bore the burden of proof on the remanded issues and failed to carry that burden.
 {¶ 23} Finally, we believe the trial court acted within its discretion in rejecting the inference Moreland suggests that defense counsel were so intent upon trying the case to a panel that they neglected to advise him of the two-tier sentencing process.
 {¶ 24} The first assignment is overruled.
 III. {¶ 25} "2. The lower court erred when it ruled that Mr. Moreland is not entitled to be competent during his capital postconviction proceedings."
 {¶ 26} Because Moreland's hearing testimony bordered on the preposterous, his counsel requested post-hearing that the trial court defer its ruling pending an evaluation for present competence. Counsel couched the request as follows.
 {¶ 27} "If this Court's final decision were to depend on Petitioner's testimony versus relying solely on the evidence proving that neither the trial court nor his trial counsel adequately informed him of the particulars of a jury waiver, then counsel respectfully requests that this Court hold its decision in abeyance and issue an order requiring Petitioner to be evaluated for competence so that Petitioner's testimony can be assigned any constitutionally weight it may or, more likely, may not deserve."
 {¶ 28} The trial court denied the request, stating that there is no constitutional right to a post-conviction proceeding and that R.C. 2953.21 does not mandate that a post-relief petitioner be competent.
 {¶ 29} These pronouncements find ample support in State v.Calhoun (1999), 86 Ohio St.3d 279, State v. Franklin,
Montgomery App. No. 19041, 2002-Ohio-2370, and State v. Eley,
Mahoning App. No. 99 CA 109, 2001-Ohio-3447. Indeed, Moreland concedes this is the current state of the law, but urges that it should not be.
 {¶ 30} We see no reason to take issue with Eley or deviate from Franklin in this case. Moreland's request was premised on the possibility that the trial court's decision would be based on his testimony. The decision clearly was not, and the trial court's denial of Moreland's request was proper.
 {¶ 31} The second assignment is overruled.
 IV. {¶ 32} "3. Ohio's postconviction procedures neither afford an adequate corrective process nor comply with due process and equal protection under the fourteenth amendment."
 {¶ 33} Moreland essentially contends under this assignment that Ohio's postconviction relief statutes are constitutionally deficient because they do not allow for discovery. We have considered this contention in State v. Taylor (June 29, 2001), Greene App. No. 2000 CA 77, 2000 CA 103 and stated:
 {¶ 34} "State post-conviction review is not a constitutional right. State v. Kinley (1999), 136 Ohio App.3d 1, 7,735 N.E.2d 921, 926, dismissed (2000), 88 Ohio St.3d 1444, 725 N.E.2d 284
(citation omitted). Thus, a petitioner for post-conviction relief receives no more rights than those granted by the post-conviction relief statute, R.C. 2953.21. Id., citing State v. Calhoun
(1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905, 909. Although R.C. 2953.21 does not grant a petitioner the right to conduct discovery, the statute is not unconstitutional because a defendant has no constitutional right to state post-conviction relief generally."
 {¶ 35} The assignment of error is overruled.
 V. {¶ 36} The judgment will be affirmed.
Brogan, J. and Grady, J., concur.