[Cite as *State v. Mammone*, 2012-Ohio-3546.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | |
| JAMES MAMMONE, III | : | Case No. 2012CA00012 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Court of Common
                                 Pleas, Case No. 2009CR0859


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                August 6, 2012


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellee

JOHN D. FERRERO                         ROBERT K. LOWE
Stark County Prosecutor                 SHAWN P. WELCH
By: RENEE M. WATSON                     250 East Broad Street
KATHLEEN O. TATARSKY                    Suite 1400
110 Central Plaza South                 Columbus, OH  43215
Suite 510
Canton, OH  44702

*Farmer, J.*

{¶1} On June 17, 2009, the Stark County Grand Jury indicted appellant, James Mammone, III, on three counts of aggravated murder in violation of R.C. 2903.01 with death penalty specifications in violation of R.C. 2929.04(A)(5), (7), and (9). One of the aggravated murder counts carried a firearm specification in violation of R.C. 2941.145. Appellant was also indicted on two counts of aggravated burglary in violation of R.C. 2911.11, each with a firearm specification, violating a civil protection order in violation of R.C. 2919.27, and attempted arson in violation of R.C. 2923.02 and 2909.03. Said charges arose from the deaths of appellant's former mother-in-law, Margaret Eakin, and his two children, Macy, age five, and James, age three.

{¶2} A jury trial commenced on January 11, 2010. The jury found appellant guilty as charged. After the mitigation phase, the jury recommended the death penalty. By judgment entry filed January 22, 2010, the trial court sentenced appellant to three consecutive death sentences.

{¶3} Appellant filed an appeal with the Supreme Court of Ohio, Case No. 10-0576. The appeal remains pending.

{¶4} On May 27, 2011, appellant filed with the trial court a petition for postconviction relief. An amended petition was filed on September 2, 2011. By judgment entry filed December 14, 2011, the trial court denied appellant's petition, finding he did not present sufficient evidence to warrant a hearing.

{¶5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶6}   "THE TRIAL COURT ERRED IN DISMISSING MAMMONE'S POST-CONVICTION PETITION WHEN HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT MINIMUM, AN EVIDENTIARY HEARING."

II

{¶7}   "THE TRIAL COURT ERRED WHEN IT DENIED THE POST-CONVICTION PETITION WITHOUT FIRST ALLOWING MAMMONE TO CONDUCT DISCOVERY."

III

{¶8}   "THE TRIAL COURT ERRED WHEN IT DENIED MAMMONE'S MOTION FOR FUNDS TO EMPLOY EXPERTS."

I

{¶9}   Appellant claims the trial court erred in denying his petition for postconviction relief as he had raised violations of his constitutional rights and presented sufficient evidentiary items to warrant a hearing.  We disagree.

{¶10}   R.C. 2953.21 governs petition for postconviction relief.  Subsection (C) states the following:

{¶11}   "The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending.  Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief.  In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against

the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal."

{¶12} In his September 2, 2011 amended petition for postconviction relief at 9-30, appellant argued ten grounds for relief.[1]

{¶13} First, appellant argued his trial counsel was ineffective for failing to obtain all necessary experts specifically, a neuropsychologist to evaluate him, and failed to request neuroimaging. Appellant argues the trial court did not properly consider these claims.

{¶14} The record establishes on August 17, 2009, the trial court appointed the testifying forensic psychologist, Jeffrey Smalldon, Ph.D., as specifically requested by appellant on June 23, 2009.

{¶15} In his petition, appellant attached as Exhibit A the affidavit of a board certified forensic psychologist, Bob Stinson, Psy.D., J.D., ABPP, who opined at ¶17, "I strongly recommend that James Mammone be evaluated by specialists in the field of neurology, neurophysiology, and neuropsychology to determine the existence of brain dysfunction, neurological insults, and/or neuropsychological deficits." Dr. Stinson at ¶15 noted Dr. Smalldon was not a neuropsychologist. In fact, Dr. Smalldon is a forensic psychologist as is Dr. Stinson.

---

[1]As noted by the trial court in its December 14, 2011 judgment entry denying appellant's petition for postconviction relief at fn. 21, "[w]ith the exception of one paragraph that appears to be in error, Mammone's sixth and seventh grounds for relief are identical."

{¶16} Dr. Smalldon testified he has conducted neuropsychological assessments requested by neurologists, neurosurgeons, and other specialists to determine "whether some of their patients may have deficits that haven't maybe turned up on MRIs and cat scans, but that may show up in neuropsychological testing." Sentencing Phase Vol. II T. at 367-368.

{¶17} Dr. Smalldon testified he met with appellant seven times with twenty hours of face-to-face time. Id. at 376. His evaluation included numerous tests given to appellant as well as a "review of a very extensive collection of case relevant background records" and third-party interviews. Id. at 377, 400-401. Dr. Smalldon found no indication of any brain disorder, despite appellant's medical history of a bicycle accident wherein he may have lost consciousness. Id. at 401. He also opined appellant was not actively psychotic, but his profile did include characteristics of those who are psychotic. Id. at 405, 406. Dr. Smalldon found appellant to have a severe personality disorder not otherwise specified with schizotypl, borderline, and narcissistic features. Id. at 408, 416-419. Appellant also exhibited the "presence of both passive aggressive and obsessive compulsive personality traits" and "generalized anxiety disorder" by history. Id. at 408, 420-421. None of the testing indicated any brain damage. Id. at 426.

{¶18} In his affidavit, Dr. Stinson, who possesses the same credentials as Dr. Smalldon, advanced the opposite opinion. We fail to see that the presence of a contradicting opinion by one who never interviewed appellant would result in any affirmative help to appellant's case. The affidavit is only an offer of a contradicting opinion and not definitive evidence on the issue.

{¶19} We find the trial court did not err in rejecting Dr. Stinson's affidavit and denying appellant's first ground for relief.

{¶20} Secondly, appellant argued his trial counsel was ineffective for failing to properly question Juror No. 430 and failing to remove this juror from the panel. This issue is ripe for appellant's direct appeal and is therefore barred under *State v. Perry* (1967), 10 Ohio St.2d 175.

{¶21} We find the trial court did not err in denying appellant's second ground for relief.

{¶22} Appellant's third and fourth grounds for relief challenged activity that occurred during jury deliberations regarding Juror No. 438 and the fact that the jury prayed before beginning deliberations on the penalty phase. In support of his arguments, appellant submitted as Exhibit B the hearsay affidavit of a criminal investigator for the State Public Defender's Office, Felicia Crawford.

{¶23} Evid.R. 606 governs competency of juror as witness. Subsection (B) states the following:

{¶24} "**(B) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after

some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes."

{¶25} The affidavit of Ms. Crawford is a flagrant attempt to bypass the aliunde rule adopted by the Ohio legislature in Evid.R. 606(B). *State v. Jones* (December 29, 2000), Hamilton App. No. C-990813. The trial court was correct in disregarding the affidavit.

{¶26} We find the trial court did not err in denying appellant's third and fourth grounds for relief.

{¶27} Appellant's fifth and sixth grounds for relief argued his trial counsel was ineffective for failing to attack the Stark County Prosecutor's Office for its arbitrary, capricious, and discriminating practice in indicting the death penalty. Appellant argued this issue violates his rights to equal protection under the United States Constitution.

{¶28} Appellant argues he has supported this claim with items dehors the record and is entitled to a hearing. The submitted items dehors the record are Exhibits F, G, H, and I attached to appellant's petition. However, these exhibits are not of evidentiary quality. Also, having served ten years on the Common Pleas bench, this writer is aware that Exhibit F, titled "Stark County Death Penalty Indictments," is an incomplete list.

{¶29} The trial court found the arguments on this issue to be barred by the doctrine of res judicata, citing *Perry,* supra, and the Supreme Court of Ohio's decision in

*State v. Jenkins* (1984), 15 Ohio St.3d 164. The *Jenkins* court at paragraph one of the syllabus held, "Ohio's statutory framework for imposition of capital punishment, as adopted by the General Assembly effective October 19, 1981, and in the context of the arguments raised herein, does not violate the Eighth and Fourteenth Amendments to the United States Constitution or any provision of the Ohio Constitution." The *Jenkins* court at 169 specifically addressed the discretionary role of the state's elected prosecuting attorney, citing Justice Stewart's opinion in *Gregg v. Georgia* (1976), 428 U.S. 153, 199:

{¶30} " 'First, the petitioner focuses on the opportunities for discretionary action that are inherent in the processing of any murder case under Georgia law. He notes that the state prosecutor has unfettered authority to select those persons whom he wishes to prosecute for a capital offense and to plea bargain with them. Further, at the trial the jury may choose to convict a defendant of a lesser included offense rather than find him guilty of a crime punishable by death, even if the evidence would support a capital verdict. And finally, a defendant who is convicted and sentenced to die may have his sentence commuted by the Governor of the State and the Georgia Board of Pardons and Paroles.

{¶31} " 'The existence of these discretionary stages is not determinative of the issues before us. At each of these stages an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty. *Furman* [*v. Georgia* (1972), 408 U.S. 238], in contrast, dealt with the decision to impose the death sentence on a specific individual who had been convicted

of a capital offense. Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution. * * *' "

{¶32} We find the trial court did not err in denying appellant's fifth and sixth grounds for relief.

{¶33} As for the seventh ground for relief, see footnote 1.

{¶34} Appellant's eighth and ninth grounds for relief argued the state failed to disclose exculpatory evidence. Appellant submitted blood and urine samples. The preliminary notes of criminalist Jay Spencer in analyzing the samples indicated a positive result for Benzodiazepines. The confirming analysis was negative as was Mr. Spencer's opinion at trial. Vol. VI T. at 63-64. Because of the lack of disclosure of the preliminary findings, appellant argued he was denied an effective argument at the suppression hearing: the taking of Valium prior to his arrest thereby affecting his confession. Appellant further argued this evidence could have countered the state's implication during final argument that he was not truthful about taking drugs. Vol. VIII T. at 53-54. Appellant argued this non-disclosure is a violation of *Brady v. Maryland* (1963), 373 U.S. 83, wherein the United States Supreme Court held at 87, "[w]e now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

{¶35} The trial court concluded Mr. Spencer's testimony was not false because the confirmation test established the samples were negative for drugs. The trial court also concluded the presence or absence of drugs in appellant's system was not material to whether he committed the crimes, and the claimed ingestion of Valium was

thoroughly vetted during the suppression hearing. November 24, 2009 T. at 42-43, 45-46, 47-48, 59-60, 67.

{¶36} Although the trial court's conclusions are correct, even without the confession, we find the overwhelming evidence presented at trial persuades us that any failure to disclose the complained of evidence did not prejudice appellant in the guilty phase of the trial.

{¶37} Marcia Eakin testified during the trial. Ms. Eakin was appellant's ex-wife, and the mother of the children-victims, Macy and James, and the daughter of the adult-victim, Margaret Eakin. She testified throughout the evening preceding the deaths, appellant texted her and called her with veiled threats regarding the children's safety who were spending the evening with him. Vol. V T. at 56-63, 69-71; State's Exhibit 15. The children were with appellant all evening until they were found dead in the backseat of appellant's vehicle the next morning. Id. at 159. Appellant's vehicle was seen at the residence of Margaret Eakin at the time of her death by neighbors who ran outside after hearing gunshots. Id. at 125, 128-129.

{¶38} In the morning, appellant called Ms. Eakin and admitted to her that he had killed her mother and the children. Id. at 78-79. After his arrest, as the blood on appellant's hands was being swabbed for evidence, appellant gratuitously stated to Canton Police Crime Scene Officer Randy Weirich that he used his left hand in stabbing the children and beating his former mother-in-law. Id. at 220-221. Appellant left a voicemail for his friend, Richard Hull, and admitted his plan to kill the children and his former mother-in-law as vengeance for the divorce. State's Exhibit 64. The time of the

voicemail was prior to the time he claimed to have taken any pills. Vol. VII T. at 46; Sentencing Phase Vol. I T. at 285-286.

{¶39} A bloody knife was found in the backseat of appellant's vehicle where the children were found stabbed and dead in their car seats. Vol. V T. at 204; State's Exhibit 2K and 28. Many of the blood samples taken from the evidence contained a mixture of DNA profiles and shared genetic types. Vol. VI T. at 164, 170, 172-173. The blood on the knife belonged to James and possibly Macy. Id. at 164-165. Appellant's hands contained the blood of Margaret Eakin and possibly James and Macy. Id. at 170-172, 173-174; State's Exhibit 45. Appellant's blood was found on the firearm used to shoot Margaret Eakin. Id. at 184-185; State's Exhibit 23B. Appellant's fingernail clippings contained the blood of his son. Id. at 190-191; State's Exhibits 48A and B.

{¶40} Even without the confession that appellant now argues might be tainted because of drug consumption, the evidence is overwhelming and conclusive of appellant's guilt.

{¶41} Appellant further argued the prosecutor's remarks during closing argument implied that he had lied about taking drugs:

{¶42} "[MR. BARR:] The pills. Why did he take the pills? Let's talk about these alleged pills that don't show up in anybody's blood, although he took dozens. Again, reason and common sense, folks, just use it. He didn't take the pills to calm him down or to dull the pain. Listen to what he says in his statement.

{¶43} "Detective George said what kind of pills? Like Valium and some kind of pain killer. I don't even know. I took a pill last night. He took one pill at 9:00. That's the pill that he took in case he got shot when he finished his plan at 5:45, 5:50 the next

morning. The next dozen he took after the killings and he thought if it calms me down or helps me or helps me or just whatever. That's why he took the pills. Because maybe he was a little shook up after he'd just taken three lives. He took those pills to calm him down. Because he'd just finished his plan because remember, he didn't want to commit suicide. He didn't want to die. He wanted Macy and James and Margaret to die. But not James Mammone. He didn't want to die. He didn't want to walk up those steps in Marcia's house. He didn't want to make himself a sitting duck because he wanted to live. Because his goal was to inflict pain on Marcia." Vol. VIII T. at 53-54.

{¶44} We find the argument to fall short of any question about false testimony from Mr. Spencer. The statements were made during closing argument and the prosecutor invited the jury to judge appellant's claim vis-à-vis appellant's actual statement to the police. State's Exhibit 13.

{¶45} We find the trial court did not err in denying appellant's seventh and eighth grounds for relief.

{¶46} As for the ninth ground for relief, we find no cumulative error. With the record, transcript, and docket, the trial court could sufficiently address the errors claimed in appellant's petition for postconviction relief.

{¶47} Upon review, we find no error in not conducting an evidentiary hearing or in denying the petition.

{¶48} Assignment of Error I is denied.

II, III

{¶49} Appellant claims the trial court erred in not granting his request for discovery or expert witnesses. We disagree.

{¶50} A petition for post-conviction relief is a civil proceeding. *State v. Milanovich* (1975), 42 Ohio St.2d 46. As the Supreme Court of Ohio stated in *State ex rel. Love v. Cuyahoga County Prosecutor's Office,* 87 Ohio St.3d 158, 159, 1999-Ohio-314, "there is no requirement of civil discovery in postconviction proceedings." This court has issued numerous opinions consistent with this holding. *State v. Sherman* (October 30, 2000), Licking App. No. 00CA39; *State v. Elmore,* Licking App. No. 2005-CA-32, 2005-Ohio-5940; *State v. Muff,* Perry App. No. 06-CA-13, 2006-Ohio-6215; *State v. Lang,* Stark App. No. 2009 CA 00187, 2010-Ohio-3975 ("the procedure to be followed in ruling on such a petition is established by R.C. 2953.21, and the power to conduct and compel discovery under the Civil Rules is not included within the trial court's statutorily defined authority" and "R.C. 2953.21 itself does not specifically provide for a right to funding or the appointment of an expert witness in post-conviction petition proceedings").

{¶51} Given the ability of the trial court to address the issues via the use of the entire case file and docket, we find appellant was not entitled to the extraordinary relief requested.

{¶52} Assignments of Error II and III are denied.

{¶53} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, J.

Delaney, P.J. and

Hoffman, J. concur.


s / Sheila G. Farmer_____


s / Patricia A. Delaney_____


s / William B. Hoffman_____

JUDGES


SGF/sg 0710

[Cite as *State v. Mammone*, 2012-Ohio-3546.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JAMES MAMMONE, III | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012CA00012 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs to appellant.

s / Sheila G. Farmer_____

s / Patricia A. Delaney_____

s / William B. Hoffman_____

JUDGES