[Cite as *State v. Cassano*, 2013-Ohio-1783.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| AUGUST CASSANO | : | Case No. 12CA55 |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
of Common Pleas, Case No. 1998-CR-
0171

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     April 11, 2013

APPEARANCES:

For Appellant:
MICHAEL J. BENZA
17850 Geauga Lake Road
Chagrin Falls, OH 44023

For Appellee:
JILL M. COCHRAN
Assistant Richland County Prosecutor
38 South Park Street
Mansfield, OH 44902

*Baldwin, J.*

{¶1}   Appellant August Cassano appeals a judgment of the Richland County Common Pleas Court dismissing his petition for postconviction relief.   Appellee is the State of Ohio.

<u>STATEMENT OF FACTS AND CASE</u>

{¶2}   On May 25, 1976, appellant was convicted of aggravated murder in Summit County.   On January 31, 1992, appellant stabbed another inmate thirty-two times with a shank that appellant tied to his hand with a shoestring.   The victim, Troy Angelo, escaped when a corrections officer opened the locked cell door.   As appellant was led away, he looked at Angelo and said, "I hope you die."   Appellant was convicted of felonious assault for the stabbing of Angelo.

{¶3}   Appellant's cellmate in 1996 was Gerald Duggan.   Appellant threatened to kill Duggan if Duggan ever snitched on him.   Appellant told Duggan that he didn't fight anymore, he stabbed.

{¶4}   In 1997, appellant was serving his sentence in the Mansfield Correctional Institution (MANCI).   On October 17, 1997, appellant sent a written message to the unit manager asking for Alfred Gibson to be his cellmate.   That same day, Walter Hardy was moved into appellant's cell.   Hardy had been in segregation for two days under suspicion of possessing a shank, but he had been exonerated.

{¶5}   Appellant told Ollie King, a counselor at MANCI, that he "didn't want that snitching ass faggot in his cell and that we better check [appellant's] record."   Appellant was very upset at having Hardy in his cell and told authorities, "You just can't put any type of motherfucker in my cell" and to check his record.

{¶6}  After Hardy moved into appellant's cell, appellant's friend Michael Cruz commented that appellant had a new roommate.  Appellant replied, "Not for long."  On October 18, 1997, appellant told an inmate that Hardy was driving him nuts and if he wasn't moved out of the cell, appellant would remove Hardy himself.

{¶7}  At 2:35 a.m. on October 21, 1997, Donald Oats, a MANCI corrections officer, heard a commotion and hurried to appellant's cell.  He saw two inmates fighting and signaled a "man down" alarm.  Oats heard Hardy yelling that appellant had a knife and was trying to kill him.  Oats saw appellant standing over Hardy, stabbing him with a shank.  Although Oats ordered him to stop, appellant continued to stab Hardy.  Two officers responded to the man down alarm, and saw appellant stabbing Hardy with the shank.

{¶8}  Oats opened the door and ordered appellant to the back of the cell.  Appellant obeyed the order.  Appellant continued to hold the shank, which was tied to his right hand with a laundry bag string.  Appellant wore a glove on his right hand.

{¶9}  Hardy was taken to the hospital where he was pronounced dead at 3:37 a.m.  Dr. Keith Norton, a pathologist, concluded that Hardy bled to death and that collapsed lungs contributed to his death.  Dr. Norton found seventy-five knife wounds, including one that pierced his heart.

{¶10} In the spring of 1998, appellant told a fellow inmate that he acted in self-defense and blacked out after stabbing Hardy eight times.  Appellant stated that Hardy was smoking crack and jumping up and down on the bunk and appellant "just went off on him."  Appellant asked Duggan to testify that he saw Hardy with the shank used to

kill him so appellant could plead self-defense, but Duggan had never seen Hardy with a shank.

{¶11} Appellant was indicted with aggravated murder with prior calculation and design with two death penalty specifications. The case proceeded to jury trial in the Richland County Common Pleas Court.

{¶12} At trial, appellant testified that at 2:30 a.m. on October 21, 1997, Hardy showed appellant a knife. Appellant testified that he snatched it out of Hardy's hand and said it was going out the window. Appellant claimed that Hardy grabbed him by the left shoulder, hit him in the face and kneed him in the groin. Appellant testified that Hardy then retrieved the knife. Appellant reclaimed the knife from Hardy, stabbed him once, and told him to settle down. However, according to appellant, Hardy kept coming at him so he stabbed him four times. He testified that Hardy tried to hit him with a chair, and then he "totally lost it." He denied that the knife had been tied to his wrist, that he had worn a glove on his right hand, or that he had planned to kill Hardy. He denied that he continued to stab Hardy when the corrections officers arrived at the cell and denied making the statements other inmates and staff had attributed to him related to Hardy. During cross-examination, appellant stated that while in prison he had been in over one hundred fights and stabbed four people. He also admitted writing to a family member that he would "never have to worry about having a cellmate ever again."

{¶13} Appellant was convicted as charged and the jury recommended the death penalty. The trial court sentenced appellant to death and the Ohio Supreme

Court affirmed the conviction and sentence on direct appeal. *State v. Cassano*, 96 Ohio St. 3d 94, 2002-Ohio-3751, 772 N.E.2d 81.

{¶14} On December 9, 1999, appellant filed a pro se motion to waive all postconviction relief. The trial court granted the motion without a hearing. On January 17, 2001, February 26, 2004 and February 28, 2007, appellant filed motions to reinstate postconviction relief. The court denied his motions to reinstate postconviction relief. This Court reversed, finding that the court erred in failing to conduct a *Berry* hearing before granting appellant's motion to waive postconviction relief in 1999. *State v. Cassano*, 5th Dist. No. 07CA27, 2008-Ohio-1045.

{¶15} On remand, the trial court allowed appellant to file a petition for postconviction relief. Appellant filed a petition on May 3, 2011. Judge Patrick Kelly was assigned by the Ohio Supreme Court to hear the case on November 3, 2011. On June 18, 2012, the court dismissed appellant's petition, finding all arguments either barred by res judicata or insufficient to raise a cognizable claim of constitutional error.

{¶16} Appellant assigns the following errors on appeal to this Court:

{¶17} "I. THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S POST-CONVICTION PEITION, WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS AND SUPPORTING EXHIBITS TO MERIT AN EVIDENTIARY HEARING AND DISCOVERY."

{¶18} "II. THE TRIAL COURT ERRED IN NOT PROVIDING RESOURCES TO CASSANO TO DETERMINING CASSANO'S COMPETENCY, FAILING TO EVALUATION [SIC] CASSANO'S COMPETENCY, AND TO RENDER AN OPINION AS TO CASSANO'S COMPETENCY TO PROCEED IN POST-CONVICTION."

{¶19} "III. THE TRIAL COURT ERRED IN DIMISSING CASSANO'S CLIAM THAT JUDGE HENSON DEPRIVED CASSANO OF HIS RIGHT TO A FAIR TRIAL DUE TO HIS BIAS AND PREJUDICE."

{¶20} "IV. THE TRIAL COURT ERRED IN DENYING RELIEF ON THE BASIS OF INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶21} "V. THE TRIAL COURT ERRED IN DENYING RELIEF ON THE BASIS OF PROSECUTORIAL MISCONDUCT."

{¶22} "VI. THE TRIAL COURT ERRED IN DENYING RELIEF ON THE BASIS OF JUROR MISCONDUCT."

{¶23} "VII. THE TRIAL COURT ERRED IN DENYING RELIEF, OR EVEN REVIEWING THE MERITS OF, CASSANO'S CHALLENGE TO THE ONGOING EIGHTH AMENDMENT VIABILITY OF OHIO'S DEATH PENALTY SCHEME."

{¶24} "VIII. THE TRIAL COURT ERRED IN DENYING RELIEF ON THE DENIAL OF CASSANO'S RIGHT OF SELF-REPRESENATION."

POSTCONVICTION RELIEF STANDARD OF REVIEW

{¶25} A postconviction petition is a special statutory proceeding governed by R.C. 2953.21. This statute provides in section (A)(1) that "[a]ny person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition * * *." See, also, *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph four of the syllabus.

{¶26} Pursuant to R.C. 2953.21(C), before granting a hearing, the trial court shall determine whether there are substantive grounds for relief. The petitioner bears the burden of specifically demonstrating prejudice before a hearing is warranted. E.g. *State v. Jackson* (1980), 64 Ohio St.2d 107, 413 N.E.2d 819.

{¶27} R.C. 2953.21(C) expressly provides that the initial determination of whether a postconviction petition states substantive grounds for relief is to be made based upon the petition and any supporting affidavits, together with the case files and records. Therefore, a petitioner for postconviction relief is not entitled to discovery during the initial stages of postconviction proceedings. E.g., *State v. Gillard*, 5th Dist. Nos. 1997CA00318, 1997CA00410, 1998 WL 351442 (June 22, 1998).

{¶28} The Ohio Supreme Court explained in *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), that constitutional issues cannot be considered in postconviction proceedings where they have already been or could have been fully litigated by the prisoner while represented before his or her judgment of conviction or on direct appeal from that judgment. *Id.* at paragraph seven of the syllabus. Therefore, under the doctrine of res judicata*,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. *Id.* at paragraph nine of the syllabus.

{¶29} Thus, a trial court may apply res judicata if the petition for postconviction relief does not include any materials outside of the original record to support the claim

for relief. *Id.; State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982). In order to overcome the res judicata bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. *Id.* at syllabus.

{¶30} It is pursuant to this standard that we review appellant's assignments of error.

I.

{¶31} Appellant argues that the postconviction procedure set forth in R.C. 2953.21 is a "meaningless ritual" and therefore unconstitutional. He argues that he was improperly denied discovery and the appointment of experts to help him investigate his claims. He also argues that several of his claims were supported by evidence outside the record and the trial court erred in dismissing these claims as res judicata.

{¶32} Several appellate courts have rejected the argument that the procedure set forth for postconviction relief is constitutionally infirm simply because the statute places a heavy burden on the defendant to show entitlement to relief and petitions are often dismissed on the grounds of res judicata. See *State v. LaMar*, 4th Dist. No. 98 CA 23, 2000 WL 297413 (March 17, 2000); *State v. Murphy*, 10th Dist. No. 00AP-233, 2000 WL 1877526 (December 26, 2000). Further, there is no constitutional right to postconviction state collateral review, even in death penalty cases. State v. Steffen, 70 Ohio St. 3d 399, 410, 639 N.E.2d 67, 76 (1994), citing *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Based on this authority, we reject appellant's

claim that the postconviction procedure set forth in R.C. 2953.21 is constitutionally infirm.

{¶33} We next turn to appellant's claim that he was improperly denied the right to discovery and the appointment of investigators and other experts to aid in preparing his petition.  This Court has previously held:

{¶34} "A petition for post-conviction relief is a civil proceeding. *State v. Milanovich* (1975), 42 Ohio St.2d 46, 325 N.E.2d 540. As the Supreme Court of Ohio stated in *State ex rel. Love v. Cuyahoga County Prosecutor's Office,* 87 Ohio St.3d 158, 159, 718 N.E.2d 426, 1999–Ohio314, 'there is no requirement of civil discovery in postconviction proceedings.' This court has issued numerous opinions consistent with this holding. *State v. Sherman* (October 30, 2000), Licking App. No. 00CA39; *State v. Elmore,* Licking App. No.2005–CA–32, 2005–Ohio–5940; *State v. Muff,* Perry App. No. 06–CA–13, 2006–Ohio–6215; *State v. Lang,* Stark App. No.2009 CA 00187, 2010–Ohio–3975 ('the procedure to be followed in ruling on such a petition is established by R.C. 2953.21, and the power to conduct and compel discovery under the Civil Rules is not included within the trial court's statutorily defined authority' and 'R.C. 2953.21 itself does not specifically provide for a right to funding or the appointment of an expert witness in post-conviction petition proceedings')."  *State v. Mammone*, 5th Dist. No. 2012CA00012, 2012-Ohio-3546, ¶50.[1]

{¶35} We therefore reject appellant's claim that he was entitled to discovery and the appointment of experts to prepare his petition.

---

[1] *Mammone*, like the instant case, was an appeal from a postconviction proceeding in a case in which the death penalty had been imposed.

{¶36} We will address appellant's argument that the trial court erred in dismissing several of his claims without a hearing because they were supported by evidence outside the record when we reach these specific issues in subsequent assignments of error.

{¶37} The first assignment of error is overruled.

II.

{¶38} In his second assignment of error, appellant argues that the court erred in failing to determine whether he was competent to proceed in postconviction review.

{¶39} In *State v. Berry*, 80 Ohio St. 3d 371, 696 N.E.2d 1097(1997), the Ohio Supreme Court held that a competency determination must be made before a capital defendant may waive his rights to seek postconviction review of his conviction and sentence. However, Ohio Courts of Appeals have held that *Berry* does not require a determination as to whether a capital defendant who chooses to seek postconviction review is competent to proceed. For example, the Seventh District held in *State v. Eley*, 7th Dist. No. 99 CA 109, 2001-Ohio-3447:

{¶40} "In a post-conviction relief proceeding, the petitioner's life is at stake. Thus, it is tempting for this court to grant Eley the requested competency hearing considering the nature of this case. However, we must exercise judicial restraint and acknowledge that a petitioner receives no more rights than those granted by the statute. *State v. Calhoun,* (1999), 86 Ohio St.3d 279.

{¶41} "Consequently, we cannot find that a post-conviction proceeding should be treated as a quasi-criminal proceeding where the petitioner must be competent to participate. Inasmuch as the post-conviction statute does not provide for a

competency hearing at this stage, and guided by *Berry,* we conclude the trial court did not abuse its discretion by refusing a competency hearing. We specifically hold a capital defendant is neither statutorily nor constitutionally entitled to a competency hearing as a part of his or her post-conviction proceedings." *Id.* *Accord, State v. Moreland*, 2nd Dist. No. 20331, 2004-Ohio-5778.

{¶42} We agree with the conclusion reached by the Seventh and Second Districts. Appellant has no constitutional right to postconviction proceedings and therefore receives no more rights than those granted by statute. Because the postconviction statute does not provide for a competency hearing at this stage, we conclude the court did not err in refusing appellant a competency evaluation and hearing.

{¶43} The second assignment of error is overruled.

III.

{¶44} In his third assignment of error, appellant argues that the court erred in dismissing his petition for postconviction relief on the grounds that the judge was not biased and impartial.

{¶45} Bias on the part of a judge will not be presumed. *In re Disqualification of Olivito,* 74 Ohio St.3d 1261,1263, 657 N.E.2d 1361. In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides. *Id.* The appearance of bias or prejudice must be compelling to overcome these presumptions. *Id.*

{¶46} Judge James Henson, the judge who presided over appellant's trial and sentenced appellant to death on the jury's recommendation, is on the Citizen's

Advisory Counsel at MANCI. Appellant argues that comments made by the judge during the trial concerning his contact with MANCI coupled with minutes of the Advisory Counsel's meetings demonstrate that the judge had ex parte contact which gave him an appearance of being biased and might have exposed him to information about the case which appellant did not have the opportunity to contest or rebut.

{¶47} The minutes of the committee meetings reflect comments by Judge Henson about the trial on two separate occasions. In one meeting, which occurred during the trial while the State was presenting its case in chief, Judge Henson thanked the staff of MANCI for their assistance with the trial, and commended staff that had to testify and be present in the courtroom for a job well done. He expressed gratification for how smoothly the trial was conducted. In a second meeting, Judge Henson mentioned that the trial would continue another week or so, that appellant cried during the film showing the murder scene, and there was good security surrounding the trial.

{¶48} During trial, the judge commented to counsel when discussing security issues, specifically the shackling of appellant during trial, that he had talked to a former employee at MANCI who told the judge there was a rumor that the Aryan Brotherhood intended to show up at the trial in support of appellant. Tr. 26. When the prosecutor indicated at a conference with the court and defense counsel that the warden at MANCI could not produce a roster of inmates until a later date, the court indicated that he would call to see if the roster could be produced earlier, and further indicated to defense counsel that he would check to see if counsel could get more time at the prison to confer with appellant. Tr. 468. During a discussion with counsel about locking down MANCI for the jury view, the court commented that he goes out

there all the time and they don't lock it down for him.  Tr. 757.  The judge later commented, again to counsel, that he knows how many inmates are at MANCI because he goes out there all the time.  Tr. 1038.  Prior to the sentencing phase, defense counsel asked if they could get someone from MANCI to talk about classification and sentencing and the court indicated to counsel that he would call and check on this for defense counsel.  Tr. 2803.

{¶49} While perhaps the court showed poor judgment in commenting on the conduct of the trial at committee meetings while the trial was still going on, nothing in the comments made at the meetings or in the comments made from the bench concerning the judge's contact with MANCI demonstrates that the judge was biased or partial.  There is no evidence that the judge had any ex parte information directly bearing on the issue of guilt or sentencing.  From the evidence submitted of minutes of the committee meetings and from the citations to the transcript, the judge's contact with MANCI related to security issues surrounding the trial and to aiding counsel for both parties in dealing with the prison.

{¶50} Appellant points to nothing in the record that demonstrates bias on the part of the trial judge or possession of ex parte information related to issues of guilt and sentence which affected his right to a fair trial.  Appellant generally argues that the judge ultimately imposed the death sentence on him and was perhaps influenced in doing so by his relationship with MANCI.  However, the jury initially recommended the death sentence and  the Ohio Supreme Court conducted an independent review of the sentence and found the sentence to be appropriate.  The Supreme Court noted that appellant's history and background provided little mitigation, and appellant made

a choice early in life to live outside the law. *Cassano*, 96 Ohio St. 3d 94 at ¶127. The court found that appellant made "deliberate choices in his life and must bear the consequences of those choices," and appellant "by his acts has demonstrated that he is a menace to the life, health, and safety of others, even when he is in prison." *Id*. at ¶128-129.

{¶51} The trial court did not err in finding that appellant had not demonstrated bias or prejudice against appellant or favoritism toward appellee. The third assignment of error is overruled.

IV.

{¶52} In his fourth assignment of error, appellant argues that the court erred in dismissing his petition on the basis of ineffective assistance of counsel. Specifically, he argues that counsel was ineffective for failing to seek disqualification of Judge Henson, failing to object to incidents of prosecutorial misconduct and jury misconduct, and failing to present more extensive evidence of appellant's mental illness in mitigation.

{¶53} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley* , 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied upon as having produced a just result. *Id.* Where a defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence outside the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief. *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169, at syllabus (1982).

{¶54} Appellant first claims that counsel was ineffective for failing to seek disqualification of Judge Henson based on his contact with MANCI. For the reasons stated in the third assignment of error, appellant has not demonstrated that the result of the proceeding would have been different had counsel successfully sought disqualification of Judge Henson. Nothing in the record supports appellant's claim that the judge was biased against him or had outside information on which he based his decision in accepting the jury's recommendation of death, and the sentence was independently reviewed by the Ohio Supreme Court and found to be appropriate.

{¶55} Appellant next claims that counsel was ineffective for failing to object to prosecutorial misconduct and juror misconduct, which are assigned as error in appellant's fifth and sixth assignments of error. Appellant has not supported this claim with any evidence outside the record; therefore, these issues could have been raised as ineffective assistance of counsel on direct appeal and are now res judicata.

{¶56} Finally, appellant argues that counsel should have submitted evidence of his extensive mental illness in mitigation. Appellant attached documents concerning his mental illness treatment history in prison to his petition, as well as printouts from the Ohio Supreme Court web site showing that one of his trial attorneys was

suspended after the trial and one was placed on medical leave and later suspended for failure to register.

{¶57} Appellant has presented no evidence that his trial attorneys' later disciplinary proceedings had any effect on his representation at trial.

{¶58} "A postconviction petition does not show ineffective assistance because it presents a new expert opinion that is different from the theory used at trial." *State v. Combs* (1994), 100 Ohio App.3d 90, 103, 652 N.E.2d 205, citing *State v. Jamison* (Sept. 19, 1990), Hamilton App. No. C-910736, unreported. Further, mitigation theories that are merely cumulative of the evidence presented at trial will not support a claim of ineffective assistance of counsel. *Id.*

{¶59} The medical records attached to appellant's petition concerning mental illness were almost all prepared after appellant was convicted and placed on death row, and thus counsel was not ineffective for failing to present this evidence which did not exist at the time of trial. Defense counsel did present evidence in mitigation that appellant was troubled when he was sentenced to a youth detention facility and came out even more anti-social, evidence that appellant's nine suicide attempts and hunger strikes while incarcerated were a plea for help, and evidence that the state's mistakes in their treatment of appellant throughout his incarceration led to his murder of Hardy. Evidence that appellant was treated for mental illness would have been mostly cumulative of this evidence.

{¶60} Further, as noted by the trial court, the strategy during sentencing was that society would be sufficiently protected by keeping appellant in prison, and more evidence of the likelihood that appellant would exhibit dangerous and unpredictable

behavior was not helpful to that strategy. A petition does not show ineffective assistance simply because it sets forth a different strategy from that used at trial. *Combs, supra*.

{¶61} The fourth assignment of error is overruled.

V.

{¶62} In his fifth assignment of error, appellant argues that the trial court erred in denying relief on the basis of prosecutorial misconduct.

{¶63} Appellant first argues that the prosecutor used peremptory challenges to exclude women from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. Appellant cites to no evidence outside the record in support of his claim. Therefore, this issue could have been raised on direct appeal and is now res judicata.

{¶64} Appellant next argues that the record reflects that the State made inmate James Pharner a state agent and inserted him near appellant to obtain statements, citing to the transcript where Pharner states that when he gave police information from appellant, he asked to be transferred to Lorain to be closer to his family. Appellant argues that the full scope of the agreement with Pharner and any information related to the state's agreement with him should have been disclosed in discovery. However, appellant has presented no evidence that any agreement existed with the State outside of what Pharner testified to at trial.

{¶65} Appellant refers to five pieces of information the prosecutor used during the trial which were not disclosed in discovery: appellant's prison file used to justify keeping him shackled (Tr. 52, 86); the journal of a prison nurse containing a statement

by appellant (Tr. 59, 1468); a tape of a hearing shortly after the incident in which appellant made incriminating statements (Tr. 83-84); notes from the above-mentioned hearing (Tr. 117), and tapes of phone calls made by Hardy (Tr. 215). Again, appellant has cited to no evidence outside the record to establish this claim, and appellant's claim that this evidence was withheld from him in discovery could have been raised on direct appeal.

{¶66} Finally, appellant argues the prosecutor had ex parte communication with the jurors. Prosecutor Ava Rotell stated during the trial, "Also, Judge, the one juror, I can't remember his name, the first juror on the right, he asked can we ask questions. I said you better ask the Judge." Tr. 2092. First, this comment does not reflect that the prosecutor had any inappropriate ex parte communication with the jurors. One of the jurors asked her a question and she referred the juror to the judge. Any error related to this claim could have been raised on direct appeal, as appellant has provided no evidence outside the record.

{¶67} The fifth assignment of error is overruled.

VI.

{¶68} Appellant argues that the court erred in denying his request for relief on the basis of juror misconduct.

{¶69} Appellant first argues that a juror committed misconduct in speaking to the prosecutor, as outlined in the fifth assignment of error. As noted above, this claim could have been raised on direct appeal and is res judicata.

{¶70} Appellant also argues that it was discovered that two of the alternate jurors were sitting with the family when the verdict was read.

{¶71} At the time it came to the court's attention that alternate jurors were seen interacting with the family, the court asked his bailiff Smokey to reiterate to the jury that if they want to be in the courtroom they have every right to be there, but they will not be allowed to have contact with the family of the victim or anyone else related to the case. Tr. 2813. Appellant has presented no evidence outside the record in connection with this claimed error. Any error in the court's handling of the alternate jurors could have been raised on direct appeal.

{¶72} The sixth assignment of error is overruled.

VII.

{¶73} In his seventh assignment of error, appellant argues that the court erred in failing to review his Eighth Amendment challenge to Ohio's death penalty scheme on the merits.

{¶74} Appellant's claim that the death penalty scheme currently in place in Ohio is unconstitutional could have been raised on direct appeal. Appellant attached an article to his petition in which Justice Paul Pfeifer of the Ohio Supreme Court suggested that the death penalty needs to be abolished in Ohio.[2] This article has no bearing on the issue of whether appellant could have raised his constitutional claims on direct appeal. Appellant's argument that the death penalty violates the Eighth Amendment is res judicata.

{¶75} The seventh assignment of error is overruled.

VIII.

{¶76} In his final assignment of error, appellant argues that the court erred in dismissing his claim that he was denied his right to self-representation. Appellant

---

[2] Justice Pfeifer authored the Supreme Court's opinion affirming appellant's conviction and sentence.

admits that this issue was raised and rejected by the Ohio Supreme Court. However, appellant argues that the Supreme Court found that he raised the issue of self-representation in the trial court for purposes of delay, and he has presented evidence to rebut this conclusion.

{¶77} Appellant attached an affidavit of Stacey Lane to his petition. In this affidavit, Lane states that he received a letter from appellant in 1997 or 1998 describing the killing of his cellmate at MANCI and asking for advice. Lane had represented himself after he was indicted for murdering his cellmate in Lebanon Correctional Institution. Lane asserted a defense of self-defense and was acquitted. He stated that he provided appellant with information as to how to defend himself.

{¶78} The Ohio Supreme Court found that appellant did not unequivocally and explicitly invoke his right to self-representation, even on April 23, 1999, three days before trial. *Cassano,* supra, at ¶38-39. Prior to that time appellant filed a pro se motion in September of 1998 focusing solely on hybrid representation. Further, appellant was represented by the same counsel for over ten months and never requested that counsel be discharged and he be permitted to proceed pro se until three days before trial. Id. at ¶41. The affidavit submitted by Stacey Lane only demonstrates that appellant had received information about representing himself in 1997 or 1998. The time for appellant to demonstrate that he was serious about representing himself was prior to trial, and the issue was fully litigated in the trial court and in the Ohio Supreme Court. The trial court did not err in denying this claim for relief.

{¶79} The eighth assignment of error is overruled.

{¶80} The judgment of the Richland County Common Pleas Court is affirmed. Costs to appellant.


By: Baldwin, J.

Hoffman, P.J. and

Wise, J. concur.


_____
HON. CRAIG R. BALDWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE


rad/CRB

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO

   Plaintiff - Appellee

-vs-

AUGUST CASSANO

   Defendant - Appellant

:
:
:
:
:
:
:
:
:
:
:
:
:

JUDGMENT ENTRY

Case No.   12CA55

   For the reasons stated in our accompanying Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed.  Costs assessed to Appellant.

_____
HON. CRAIG R. BALDWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE