[Cite as *State v. Lawson*, 2014-Ohio-3554.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2013-12-093 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 8/18/2014 |
| - vs - | | |
| | : | |
| JERRY R. LAWSON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 1987 CR 05488

D. Vincent Faris, Clermont County Prosecuting Attorney, Judith Brant and Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Randall L. Porter, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215 and Buell & Sipe Co., L.P.A., Randall L. Porter and Dennis L. Sipe, 322 Third Street, Marietta, Ohio 45750, for defendant-appellant

        **M. POWELL, J.**

        {¶ 1} Defendant-appellant, Jerry R. Lawson, appeals a decision of the Clermont

County Court of Common Pleas denying his motion for postconviction relief. For the reasons

discussed below, we affirm the decision of the trial court.

**I. Facts and Procedural History**

        {¶ 2} This court has heard numerous appeals relating to Lawson's 1987 murder

charge, subsequent conviction and death sentence. The facts underlying Lawson's convictions are more fully discussed in *State v. Lawson*, 12th Dist. Clermont No. CA88-08-044, 1990 WL 73845 (June 4, 1990). The following facts are relevant to the current appeal.

{¶ 3} On September 23, 1987, Lawson shot and killed Timothy Martin (Martin), in retaliation for Martin implicating Lawson and his brother, Timothy Lawson, in a number of residential burglaries in Owensville, Ohio. With the aid of William and Sue Payton, Martin was persuaded to meet up with the Lawson brothers and Payton.[1] Payton had told Martin about a fictitious marijuana field that could be raided in order to lure Martin to a secluded area. The four men drove along back roads of Clinton and Brown counties and eventually stopped near an old barn and walked a short distance into the woods. Once there, Lawson pulled out a handgun and shot Martin in the back. Martin fell to the ground and pleaded with the men to take him to the hospital. However, Lawson confronted Martin about being a "snitch" and began kicking and beating Martin in his head and ribs. Lawson continued to physically and verbally torment Martin until he died approximately 45 minutes later. The men then hid the body in a shallow hole next to a fallen tree.

{¶ 4} Two days after the shooting, Payton met with FBI Special Agent Larry Watson, and informed him of the Martin murder. Thereafter, the Paytons agreed to cooperate with police in the investigation of Martin's murder.

{¶ 5} Lawson was subsequently charged with two counts of aggravated murder, three counts of kidnapping, two counts of intimidation, aggravated robbery, aggravated burglary, and gross abuse of a corpse. All counts, except the abuse of corpse, carried specifications. After initially pleading not guilty to the charges, Lawson changed his plea to not guilty by reason of insanity. Before trial, Lawson stipulated he had shot Martin.

---

1. For ease of discussion, we will refer to William Payton as "Payton" and Sue and William Payton collectively as "the Paytons."

{¶ 6} On April 26, 1988, a jury convicted Lawson of two counts of aggravated murder with capital specifications, two counts of kidnapping, one count of aggravated robbery, and two counts of intimidating a witness. After a mitigation hearing, the jury recommended the death penalty on the aggravated murder charges. The trial court approved the jury's recommendation on May 3, 1988, and sentenced Lawson to death for the aggravated murder of Martin. The trial court imposed concurrent sentences for the remaining charges.

{¶ 7} Lawson appealed his convictions and sentence to this court, and we affirmed. *State v. Lawson*, 12th Dist. Clermont No. CA88-08-044, 1990 WL 73845 (June 4, 1990) (*Lawson I*). The Ohio Supreme Court also affirmed Lawson's convictions and sentence in *State v. Lawson*, 64 Ohio St.3d 336, 1992-Ohio-47 (*Lawson II*). The United States Supreme Court denied Lawson's petition for writ of certiorari on March 29, 1993. *Lawson v. Ohio*, 507 U.S. 1007, 113 S.Ct. 1653 (1993).

{¶ 8} Lawson then sought postconviction relief. On December 15, 1993, Lawson filed his first petition, arguing 41 claims for relief. The trial court, without a hearing, dismissed Lawson's petition. Lawson appealed that decision to this court in *State v. Lawson*, 103 Ohio App.3d 307 (12th Dist.1995) (*Lawson III*). We affirmed the trial court's decision. The Ohio Supreme Court declined to accept jurisdiction of the case. *State v. Lawson*, 74 Ohio St.3d 1404 (1995).

{¶ 9} After exhausting these state remedies, Lawson filed for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. The district court conducted an eight day hearing in 1997 on Lawson's habeas petition. Ultimately, the district court granted in part and denied in part Lawson's petition, and vacated Lawson's death sentence. *Lawson v. Warden, Mansfield Correctional Institution*, 197 F.Supp.2d 1072 (S.D.Ohio 2002). Both the state and Lawson appealed that decision to the Sixth Circuit Court of Appeals.

{¶ 10} Lawson asserted before the federal habeas court that he was mentally retarded, and thus ineligible for the death penalty pursuant to the United States Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242 (2002).[2] The Sixth Circuit ordered Lawson's appeal from the District Court be held in abeyance while he exhausted his claims of mental retardation and government interference of his right to counsel in the state courts. *Lawson v. Warden*, Sixth Circuit Case Nos. 02-3413, 02-3483 (Aug. 13, 2003). Accordingly, in 2003, Lawson filed another motion for postconviction relief asserting these two claims.

{¶ 11} On August 30, 2005, the trial court held a hearing and thereafter denied Lawson's motion with respect to his mental retardation claim finding he had failed to prove by a preponderance of the evidence that he is mentally retarded. On appeal, this court affirmed the trial court's decision denying his petition for postconviction relief. *State v. Lawson*, 12th Dist. Clermont No. CA2007-12-116, 2008-Ohio-6066 (*Lawson IV*). The Ohio Supreme Court declined to hear Lawson's appeal of that decision. *State v. Lawson*, 123 Ohio St.3d 1523, 2009-Ohio-6487.

{¶ 12} Lawson then pursued the other argument in his 2003 motion for postconviction relief, claiming the state had interfered with his constitutional right to counsel when a courtroom deputy overhead conversations between himself and counsel with respect to finding and interviewing William Payton. The trial court dismissed Lawson's petition. Lawson appealed to this court. In *State v. Lawson*, 12th Dist. Clermont No. CA2011-07-056, 2012-Ohio-548 (*Lawson V*), this court affirmed the trial court's decision. The Ohio Supreme Court declined to accept jurisdiction of the case. *State v. Lawson*, 135 Ohio St.3d 1431, 2013-Ohio-1857.

---

2. In *Atkins*, the United States Supreme Court held that executing a mentally retarded person violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Atkins* at 304.

{¶ 13} On April 4, 2013, Lawson filed the instant petition for postconviction relief asserting 16 claims for relief. In response to Lawson's petition, the state filed a motion to dismiss. After considering Lawson's petition, the state's motion to dismiss, and the respective responses, the trial court denied the petition. In denying the petition, the trial court found that the "majority of the information relied upon in this petition is old information that does not meet the standard set forth by R.C. 2953.23(A) and none of the information has demonstrated that the defendant was denied his constitutional rights." Lawson now appeals the trial court's decision, raising three assignments of error for our review. For ease of discussion, we address the assignments of error out of order.

## II. Analysis

### A. Standard of Review for Postconviction Relief Petitions

{¶ 14} A postconviction proceeding is not an appeal of a criminal conviction, but rather, is a collateral civil attack on a criminal judgment. *State v. Dillingham*, 12th Dist. Butler Nos. CA2012-02-037 and CA2012-02-042, 2012-Ohio-5841, ¶ 8, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). R.C. 2953.21 through 2953.23 set forth the means by which a convicted defendant may seek to have the trial court's judgment or sentence vacated or set aside pursuant to a petition for postconviction relief. *State v. Hibbard*, 12th Dist. Butler No. CA2013-03-051, 2014-Ohio-442, ¶ 21. R.C. 2953.21(A)(2) sets forth the general postconviction relief protocol and provides that such motions must be filed no later than 180 days after the date on which the trial transcript is filed with the court of appeals in the direct appeal, or, if a direct appeal was not pursued, 180 days after the expiration of the time in which a direct appeal could have been filed. R.C. 2953.21; *Hibbard* at ¶ 21.

{¶ 15} Pursuant to R.C. 2953.23(A)(1), a court "may not entertain" an untimely petition or a second or successive petition unless the petitioner demonstrates both of the following requirements:

- 5 -

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent * * * to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶ 16} In other words, a court may entertain an untimely or successive petition for postconviction relief only if the petitioner demonstrates either: (1) he was unavoidably prevented from discovering the facts necessary for the claim for relief; or (2) the United States Supreme Court has recognized a new federal or state right that applies retroactively to persons in the petitioner's situation and the petitioner asserts a claim based on that right. R.C. 2953.23(A)(1)(a); *State v. Kent*, 12th Dist. Preble No. CA2013-05-003, 2013-Ohio-5090, ¶ 12. If the petitioner is able to satisfy one of these threshold conditions, he must then demonstrate by clear and convincing evidence that, but for the constitutional error at trial, no reasonable fact-finder would have found him guilty of the offenses or found him eligible for a death sentence. R.C. 2953.23(A)(1)(b); *Hibbard* at ¶ 22.

{¶ 17} "In reviewing an appeal of postconviction relief proceedings, this court applies an abuse of discretion standard." *State v. Snead*, 12th Dist. Clermont No. CA2014-01-014, 2014-Ohio-2895, ¶ 16. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 34; *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

**B. Constitutional Challenges**

{¶ 18} Assignment of Error No. 3:

{¶ 19} THE TRIAL COURT ERRED WHEN IT DID NOT DECLARE R.C. 2953.21 AND [R.C.] 2953.23(A)(2) CONSTITUTIONALLY INFIRM ON THEIR, [SIC] FACE AND AS APPLIED TO APPELLANT.

{¶ 20} In Lawson's third assignment of error, he challenges the constitutionality of the postconviction relief statutory scheme in R.C. 2953.21 and R.C. 2953.23(A). Lawson asserts R.C. 2953.23(A) is unconstitutional both on its face and as applied to him.

{¶ 21} Lawson asserts R.C. 2953.23 is unconstitutional on its face as it violates the Supremacy Clause of the U.S. Constitution, the Separation of Powers Doctrine, and the "due course of Law" and "open courts" provisions of Section 16, Article I of the Ohio Constitution. As conceded by Lawson, this court has already considered and rejected Lawson's constitutional challenges to R.C. 2953.23 in this regard. *Lawson V*, 2012-Ohio-548 at ¶ 23-33. In *Lawson V*, we relied on our decision in *State v. McGuire*, 12th Dist. Preble No. CA2000-10-001, 2001 WL 409424 (Apr. 23, 2001) and found R.C. 2953.23 is a valid exercise of legislative authority and the provisions of the statute do not violate the Supremacy Clauses of the U.S. Constitution and Ohio Constitution, the Separation of Powers Doctrine, or the "due course of law" and "open courts" provision of Article I, Section 16 of the Ohio Constitution. *Lawson V* at ¶ 26-30. We reject Lawson's invitation to revisit our holdings in *Lawson V* and *McGuire*, and we continue to find that the postconviction relief statute is constitutional on its face.

{¶ 22} Lawson has also previously argued the statute is unconstitutional as applied to him. *See Lawson V* at ¶ 30. Once again, he asserts the statute is unconstitutional as it applies to him because it denies him the benefit of a "rational and more lenient standard of review provided by federal rules and judicial decisions." We rejected this argument in *Lawson V*, and we find no reason to revisit that decision here. *Id.* at ¶ 30-33. Lawson has

been afforded ample opportunity to challenge his convictions. He has been afforded the right to direct appeals, and three prior petitions for postconviction relief. We also note that the clear and convincing standard found in R.C. 2953.23(A)(1) applied to Lawson's constitutional challenges *only after* he filed an unsuccessful petition for postconviction relief, and sought a second, third, and now a fourth petition for postconviction relief. The state is entitled, at some point, to the finality of the judgment, and applying a clear and convincing standard to a fourth petition for postconviction relief is not unconstitutional. *See Lawson V* at ¶ 32.

{¶ 23} Although not specifically labeled as a constitutional argument, Lawson also challenges R.C. 2953.23(A) on the basis that the phrase "may not entertain" is used as opposed to "shall not entertain." Lawson contends the trial court erred when it found the jurisdictional requirements of R.C. 2953.23(A) were mandatory because, according to Lawson, the plain language of the statute evidences the legislature's intent for trial courts to maintain discretion over whether it will hear successive postconviction relief petitions.

{¶ 24} In *State v. Johnson*, 5th Dist. Guernsey No. 12 CA 19, 2013-Ohio-1398, the Fifth District Court of Appeals considered this same argument and found: "While the word 'may' generally implies discretion to do an act, we find no distinction between 'may not' and 'shall not' when the General Assembly uses the language to prohibit actions." *Id.* at ¶ 21. We find the rationale of the *Johnson* court persuasive and likewise find there is no meaningful difference between "may not" and "shall not" as it is used in R.C. 2953.23(A). *See also State v. Conway*, 10th Dist. Franklin No. 12AP-412, 2013-Ohio-3741, ¶ 64. Moreover, it is well-established that unless a petitioner satisfies R.C. 2953.23(A), a trial court lacks jurisdiction to hear an untimely or successive petition for postconviction relief. *State v. Garcia*, 12th Dist. Butler No. CA2013-02-025, 2013-Ohio-3677, ¶ 12; *see also State v. Halliwell*, 134 Ohio App.3d 730, 734 (8th Dist.1999). Accordingly, Lawson's argument is without merit.

{¶ 25} Having found R.C. 2953.23 is not unconstitutional on its face or as applied to Lawson, his third assignment of error is overruled.

## C. Standard Applied to Lawson's Postconviction Relief Motion

{¶ 26} Assignment of Error No. 1:

{¶ 27} THE TRIAL COURT ERRED WHEN IT HELD THAT APPELLANT NEEDED TO SATISFY THE REQUIREMENTS CONTAINED IN R.C. 2953.23(A) FOR IT TO GRANT APPELLANT RELIEF.

{¶ 28} In his first assignment of error, Lawson challenges the trial court's finding that his postconviction relief petition is a successive petition subject to the clear and convincing standard under R.C. 2953.23(A). Lawson asserts the instant petition should have been treated as an initial petition, and thus subject to the more lenient standard set forth in R.C. 2953.21. In support of this argument, Lawson cites the Supreme Court of Ohio's decision in in *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, ¶ 17.

{¶ 29} In *Lott*, the petitioner sought postconviction relief and requested his death sentence be vacated based upon the United States Supreme Court's holding that the execution of mentally retarded criminals violates the Eighth Amendment's ban on cruel and unusual punishments. *Lott* at ¶ 4, citing *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242 (2002). The Ohio Supreme Court recognized that *Atkins* established a new federal right with respect to convicted, mentally retarded defendants, and consequently, as the petition was filed for the first time since *Atkins*, the petition was more similar to an initial petition and thus not subject to the "clear and convincing" standard under R.C. 2953.23. *Lott* at ¶ 17. The Ohio Supreme Court thereafter determined that petitioners raising the *Atkins* issue in a postconviction relief petition must establish by a preponderance of the evidence that they are mentally retarded to be death penalty ineligible. *Id.*

{¶ 30} Lawson urges this court to similarly construe his current petition as an initial petition because the petition was prompted by the United States Supreme Court's "ground breaking" decision in *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388 (2011). Lawson asserts, similar to the petitioner in *Lott*, that he filed the instant petition for postconviction relief for the first time since *Pinholster*, and therefore it is more akin to an initial petition, rather than successive. Lawson states that the purpose of the petition was "to preserve evidence in the state court so that the federal system would not be precluded from considering the evidence that was developed at the federal habeas trial." He further asserts that the *Pinholster* decision "held that state courts should be given the first opportunity to pass on evidence initially developed in the federal habeas proceeding." We find no merit to Lawson's arguments.

{¶ 31} In *Pinholster*, the United States Supreme Court held that where an application for a writ of habeas corpus seeks relief based upon a claim that has been "adjudicated on the merits in State court proceedings," 28 U.S.C. 2254(d) limits review "to the record that was before the State court that adjudicated the claim on the merits." *Pinholster* at 1398.[3] In reaching its decision, the United States Supreme Court reasoned that the purpose of the structure of federal habeas jurisdiction, including Section 2254, is to ensure "that state courts are the principal forum for asserting constitutional challenges to state convictions." *Pinholster* at 1401, quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 787 (2011).

{¶ 32} We find no reason to treat Lawson's instant petition as anything other than a

---

3. As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. 2254 sets several limits on a federal court's power to grant habeas relief to a state prisoner. As relevant here, if an application includes a claim that has been "adjudicated on the merits in State court proceedings," Section 2254(d) states that an application "shall not be granted with respect to [such a] claim * * * unless the adjudication of the claim * * * (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See also Pinholster* at 1398. In addition, Section 2254(e)(2) limits the discretion of federal habeas courts to take new evidence in an evidentiary hearing where the applicant has failed to develop the factual basis of a claim in State court proceedings. *Id.* at 1400-1401.

successive petition for postconviction relief. As an initial matter, we note that unlike *Atkins*, the decision in *Pinholster* did not establish a new federal right. Rather, the *Pinholster* decision clarified the evidentiary limits for state prisoners seeking habeas corpus relief in federal court. *Pinholster* at 1398. The decision did not relate to any constitutional right, but rather interpreted state prisoner's rights with regards to habeas corpus proceedings pursuant to their statutory rights under 28 U.S.C. 2254.

{¶ 33} Moreover, we do not find that *Pinholster* instructed state courts to hear evidence developed at a federal habeas proceeding in order to facilitate a prisoner's habeas corpus petition. Rather, the Supreme Court's decision provided guidelines and instructions to the federal district courts with regards to what evidence it could consider under a claim for relief that has previously been adjudicated on the merits by the state courts as contemplated under Section 2254(d)(1). Specifically, the Court held that "evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Pinholster* at 1400. As noted by the *Pinholster* Court: "Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo." *Pinholster* at 1399.[4]

{¶ 34} Although the *Pinholster* decision carries out the goal of "promoting comity, finality, and federalism by giving state courts the first opportunity to review [a] claim, and to

---

4. As stated by the *Pinholster* court, "[a]lthough state prisoners may sometimes submit new evidence in federal court, [the habeas] statutory scheme is designed to strongly discourage them from doing so. Provisions like §§2254(d)(2) and (e)(2) ensure that 'federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Id.* at 1401, quoting *Williams v. Taylor*, 529 U.S. 420, 437, 120 S.Ct. 1479.

correct any constitutional violation in the first instance," we fail to see how this decision required the trial court to consider Lawson's petition without regard to the jurisdictional and evidentiary requirements of R.C. 2953.23(A).

{¶ 35} In addition, we note that in *Lott*, the Supreme Court stated that any defendants who wanted to raise an *Atkins* claim must file such a petition within 180 days after the decision, otherwise the petitioner would be required to meet the statutory standards under R.C. 2953.23 for untimely and successive petitions for postconviction relief. *Lott* at ¶ 24. *Pinholster* was decided on April 4, 2011; therefore, even if we accepted Lawson's arguments arguendo, the time limit for an initial petition has expired. Lawson did not file the instant petition until April 4, 2013, well outside the 180 day limitation. *See* R.C. 2953.21. Accordingly, as he failed to meet the timing requirements under R.C. 2953.21, his petition would have still been required to meet the clear and convincing standard for untimely and successive petitions for postconviction relief under R.C. 2953.23.

{¶ 36} Based on the foregoing, we find the trial court did not err in finding Lawson was required to meet the requirements under R.C. 2953.23 in order for the court to entertain the petition. Lawson's second assignment of error is overruled.

### D. Merits of Lawson's Claims for Relief

{¶ 37} Assignment of Error No. 2:

{¶ 38} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT RELIEF ON EACH OF THE SIXTEEN GROUNDS FOR RELIEF CONTAINED IN HIS POST-CONVICTION PETITION.

{¶ 39} In his second assignment of error, Lawson asserts that he raised 16 distinct constitutional violations within his petition for postconviction relief and supported those grounds for relief with evidence. Lawson contends that the trial court therefore erred and abused its discretion when it denied his petition as to each of the 16 grounds for relief.

{¶ 40} Before turning to each of Lawson's grounds for relief, we note that although a petition for postconviction relief permits a person to bring a collateral challenge to the validity of a conviction or sentence in a criminal case, it does not provide a petitioner a second opportunity to litigate a conviction. *State v. Rose*, 12th Dist. Butler No. CA2012-03-050, 2012-Ohio-5957, ¶ 15-16; *State v. Bush*, 96 Ohio St.3d 235, 238 (2002). Accordingly, "[i]t is well established that a trial court may dismiss a postconviction relief petition on the basis of the doctrine of res judicata." *State v. Bayless*, 12th Dist. Clinton Nos. CA2013-10-020 and CA2013-10-021, 2014-Ohio-2475, ¶ 9, quoting *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 30.

{¶ 41} Under res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment. *Kent*, 2013-Ohio-5090 at ¶ 17; *State v. Wagers*, 12th Dist. Preble No. CA2011-08-007, 2012-Ohio-2258, ¶ 10, citing *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), syllabus. This doctrine "promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *Snead*, 2014-Ohio-2895 at ¶ 18, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 18. However, "there is an exception to the res judicata bar when the petitioner presents competent, relevant, and material evidence outside the record *that was not in existence and available to the petitioner in time to support the direct appeal*." (Emphasis sic.) *State v. Piesciuk*, 12th Dist. Butler No. CA2013-01-011, 2013-Ohio-3879, ¶ 18. Evidence outside the record, or evidence dehors the record, must demonstrate that appellant could not have appealed the constitutional claim based upon information in the original record and such evidence must not have been in

existence and available to the petitioner at the time of trial. *Id.*

{¶ 42} We now consider each of the 16 grounds for relief in turn, keeping in mind the standard set forth above under R.C. 2953.23.

### 1. First Ground for Relief

{¶ 43} In his first ground for relief, Lawson argues Ohio's statutory scheme for postconviction relief is unconstitutional because it does not provide an "adequate corrective process." As recognized in our resolution of Lawson's third assignment of error, this court has already addressed the constitutionality of Ohio's postconviction relief statutory scheme and found such to be constitutional. *See also Lawson V*, 2012-Ohio-548 at ¶ 26. Moreover, "this court has already determined that 'the statutory procedure for postconviction relief constitutes an adequate corrective process.'" *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 34, quoting *State v. Lindsey*, 12th Dist. Brown No. CA2002-02-002, 2003-Ohio-811, ¶ 23. We see no reason to deviate from this prior precedent. Accordingly, the trial court did not err when it denied Lawson's first ground for relief.

### 2. Second and Third Grounds for Relief

{¶ 44} In his second and third grounds for relief, Lawson challenged his competency. Specifically, Lawson asserted he was incompetent at the time of pretrial, trial, and at sentencing. He further argued that he is presently incompetent, and therefore all proceedings must cease until his competency is restored.

{¶ 45} We find Lawson's claims regarding his incompetency during pretrial, trial, and sentencing are barred by the doctrine of res judicata. All of the facts necessary to challenge Lawson's competency during these proceedings existed at the time of his conviction. Accordingly, Lawson could have and should have raised this issue at the time of the direct appeal. *See Kent*, 2013-Ohio-5090 at ¶ 19. Moreover, it appears Lawson previously raised these same claims for relief in his first postconviction relief petition which the trial court

denied, and we affirmed. *See Lawson III*, 103 Ohio App.3d at 316. Lawson has failed to demonstrate that there is any new evidence that he was unavoidably prevented from discovering which would establish this claim of relief. Accordingly, we find no reason to revisit our holding in *Lawson III*.

{¶ 46} As to his current competency, Lawson argued that he is presently incompetent and therefore the postconviction proceedings should have been stayed until his competency is restored. Alternatively, Lawson argued the trial court erred in failing to order a competency evaluation. Several Ohio courts have previously considered the argument now raised by Lawson and have concluded that a petitioner is not entitled, statutorily or constitutionally, to a competency hearing or evaluation in connection with postconviction proceedings. *State v. Spivey*, 7th Dist. Mahoning No. 12 MA 75, 2014-Ohio-721, ¶ 42; *State v. Cassano*, 5th Dist. Richland No. 12CA55, 2013-Ohio-1783, ¶ 42; *State v. Moreland*, 2d Dist. Montgomery No. 20331, 2004-Ohio-5778, ¶ 30; *State v. Neyland*, 6th Dist. Wood No. WD-12-014, 2013-Ohio-3065, ¶ 52. As aptly stated by Seventh District Court of Appeals:

> Other than a competency hearing to ensure that a capital defendant is competent to make the decision to forego postconviction proceedings and submit to his execution, a capital defendant is not entitled to a competency evaluation and hearing to determine whether he is competent to assist in the postconviction proceedings.

*Spivey* at ¶ 42. We agree with the conclusion reached by these courts. As noted above, a postconviction proceeding is a collateral civil attack on a criminal judgment. *Dillingham*, 2012-Ohio-5841 at ¶ 8. Although the petitioner's life is at stake in postconviction proceedings for capital defendants, we must acknowledge that postconviction review is not a constitutional right, and accordingly a petitioner receives no more rights than those granted by statute. *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994); *State v. Calhoun*, 86 Ohio St.3d 279 (1999). Consequently, because the postconviction relief statute does not provide for a competency

hearing at this stage, we conclude the trial court did not err in refusing Lawson a competency hearing and evaluation.

{¶ 47} Moreover, even if we had found Lawson was entitled to a competency hearing and evaluation, Lawson failed to present sufficient evidence which would have required the trial court to order such a hearing. Much of the evidence presented by Lawson about his alleged current incompetency relates to his psychiatric treatment while in prison and his consistent diagnosis of suffering from a "serious mental illness." However, "[h]aving a mental illness is not necessarily equivalent to being legally incompetent to stand trial." *State v. Blankenship*, 115 Ohio App.3d 512, 518 (12th Dist.1996), quoting *State v. Berry*, 72 Ohio St.3d 354 (1995), syllabus.

{¶ 48} Based on the foregoing, the trial court did not err in denying Lawson's second and third grounds for relief.

### 3. Fourth and Fifth Grounds for Relief

{¶ 49} In his fourth and fifth grounds for relief, Lawson argued his convictions are void or voidable because he was denied the effective assistance of experts during the trial and mitigation stages of his capital case. Specifically, he claimed he should have been interviewed and evaluated by a psychologist and a neuropsychologist. In the alternative, Lawson asserts his trial counsel was ineffective for failing to employ such competent experts. According to Lawson, if he had been evaluated by these mental health professionals they would have provided additional information to the jury regarding Lawson's state of mind at the time of the murder, and thus such testimony would have impacted both the trial and sentencing phases.

{¶ 50} Again, we find these arguments are barred by res judicata as Lawson could have raised his ineffective assistance of counsel claims and his claims relating to the lack of evidence presented at trial and at mitigation about his mental state during his direct appeal.

*See Wagers*, 2012-Ohio-2258 at ¶ 10.  In addition, Lawson asserted these same arguments within his first petition for postconviction relief which the trial court denied, and we affirmed on appeal.  *See Lawson III* at 314-316*.*  Lawson has not set forth any new evidence in support of these arguments which has not been available to him for several years.  The evidence Lawson submitted in support of these claims consisted of an exhibit and the hearing transcript from the federal habeas proceedings in 1997.  Lawson has failed to demonstrate that he was unavoidably prevented from discovering this information as required by R.C. 2953.23.  Therefore, the trial court did not err in denying Lawson's fourth and fifth grounds for relief.

### 4.  Sixth, Seventh, and Eighth Grounds for Relief

{¶ 51} In his sixth, seventh, and eighth claims for relief, Lawson asserted several violations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194.  In *Brady,* the United States Supreme Court held, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *State v. Stojetz*, 12th Dist. Madison No. CA2009-06-013, 2010-Ohio-2544, ¶ 12, quoting *Brady* at 87.  Evidence is "material" if there is a reasonable probability that the proceeding would have turned out differently had the evidence been disclosed.  *Stojetz* at ¶ 12.

{¶ 52} Many of the *Brady* violations Lawson raised in the instant petition have been fully litigated.  Specifically, Lawson's claim that the state committed a *Brady* violation when it failed to disclose the statements of the Paytons and any related notes made by the prosecutor during such interviews was fully litigated in *Lawson I* and *Lawson II*.  This court and the Ohio Supreme Court reviewed the materials and found no *Brady* violation.  *Lawson I*,

1990 WL 73845 at *9-11; *Lawson II*, 64 Ohio St.3d at 342-345.[5] Similarly, Lawson's claims regarding the state's failure to disclose the FBI reports with respect to William Payton were fully litigated in *Lawson II.* There, the Supreme Court held that because "the FBI reports were not in the state's possession, they were not subject to *Brady.*" *Lawson II* at 344-345. Furthermore, Lawson raised substantially these same arguments in his first postconviction relief petition and each was rejected by the trial court and subsequently affirmed by this court. *See Lawson III*, 103 Ohio App.3d at 316. Accordingly, as these particular *Brady* violations have been fully litigated, Lawson's arguments are without merit based on the doctrine of res judicata. *See Snead*, 2014-Ohio-2895 at ¶ 19.

{¶ 53} Although Lawson did not specifically argue a *Brady* violation, he asserted in his third petition for postconviction relief that his constitutional rights were violated when a deputy overheard a conversation between Lawson and his attorney regarding the need to find and interview Payton. The deputy documented the conversation and shared the document with the prosecutor. In *Lawson V*, we found that Lawson was unavoidably prevented from discovering the deputy's report. *Lawson V*, 2012-Ohio-548 at ¶ 53. However, we affirmed the trial court's decision that Lawson was not entitled to relief as he failed to fulfill the second requirement of R.C. 2953.23(A)(2), demonstrating a constitutional violation or that absent the alleged violation, he would not have been convicted. *Id.* Lawson could have and should have raised his *Brady* argument regarding the deputy's report at that time. "Res judicata applies to bar raising piecemeal claims in successive postconviction relief petitions * * * that could have been raised, but were not, in the first postconviction relief petition." *State v. Johnson*, 5th Dist. Guernsey No. 12 CA 19, 2013-Ohio-1398, ¶ 47; *see also State v. Ballard*,

---

5. The Supreme Court found that the prosecutor's notes regarding the interviews with the Paytons "did not contain any additional evidence material to appellant's guilt or punishment." *Lawson II* at 344. The court also found that "whatever may be considered even remotely favorable to the accused had been disclosed to the defense through other means." *Id.*

12th Dist. Warren No. CA92-10-091, 1993 WL 106147, *2 (Apr. 12, 1993). Accordingly, we find this argument, too, is barred by the doctrine of res judicata.

{¶ 54} Lawsons' remaining arguments relate to other statements and evidence that he alleged was favorable to him or would have at least contradicted the trial testimony given by his brother, Timothy Lawson. Essentially, Lawson argued the state's suppression of evidence, particularly, the testimony of William Payton violated his rights as it "debunked the [s]tate's theory" of the case. Specifically, Lawson argued that the state should have disclosed letters written by Clermont County Judge William Walker which indicated Payton had an outstanding felony warrant. In addition, Lawson argued that the state should have disclosed notes from officers within the Clermont County Sheriff's Office which indicated Timothy Lawson had previously threatened to kill Martin. The trial court found that the above exhibits and the related information was not material to guilt or punishment such that there was not a reasonable probability that the proceeding would have turned out differently. Upon review, we agree. Moreover, we note that the evidence relied upon by Lawson within each of these claims for relief has been in existence since the time of the federal hearing in 1997. Accordingly, Lawson has failed to show that he was unavoidably prevented from discovering the facts with which to support these claims. *See* R.C. 2953.23.

{¶ 55} Based on the foregoing, we find the trial court did not err in denying relief on Lawson's sixth, seventh, and eighth grounds for relief.

### 5. Ninth Ground for Relief

{¶ 56} In Lawson's ninth ground for relief, he asserted his convictions and sentences are void or voidable due to prosecutorial misconduct that occurred prior to and during his trial. Lawson argued the prosecutor acted inappropriately by advising Payton not to speak with defense counsel. This argument appears to merely be a repackaging of Lawson's arguments from his third petition for postconviction relief.

{¶ 57} In *Lawson V*, this court found that there was no indication in the record that the state "hid Payton." *Id.* at ¶ 50. Rather the record "merely establishes that, on one occasion, an assistant prosecutor advised Payton not to speak with defense counsel in a hallway of the courthouse." *Id.* Accordingly, we affirmed the trial court's decision denying postconviction relief. As the factual basis for Lawson's ninth ground for relief is the same as that which he relied in his third petition for postconviction relief, we find Lawson could have and should have asserted this argument in that petition. *See Johnson* at ¶ 47. Lawson has not set forth any new set of facts which would support this claim. As such, this argument is also barred by res judicata. The trial court did not err in denying Lawson's ninth ground for relief.

### 6. Tenth Ground for Relief

{¶ 58} In his tenth ground for relief, Lawson argued that the state permitted its key witness, Timothy Lawson, to give inaccurate and perjured testimony. Essentially, Lawson asserts once more that Timothy Lawson's testimony was false and the state was aware that it was false as his testimony differed from Payton's version of events.

{¶ 59} Once again, we find this argument is barred by res judicata as Lawson raised this argument within his first petition for postconviction relief. As noted previously, the trial court denied the motion, and we affirmed that decision in *Lawson III*, 103 Ohio App.3d at 316. Moreover, Lawson has not set forth any new evidence in support of this argument which has not been available to him for several years. The evidence Lawson submitted in support of these claims included the hearing transcript from his federal habeas proceedings in 1997 as well as Payton's 1993 affidavit. Lawson has further failed to demonstrate that he was unavoidably prevented from discovering this information as required by R.C. 2953.23. Therefore, we find the trial court did not err in denying Lawson's tenth ground for relief.

### 7. Eleventh Ground for Relief

{¶ 60} In Lawson's eleventh ground for relief, he argued that his convictions and

sentences are void or voidable because the state failed to provide its expert, Dr. Roger Fisher, with all of the information that he needed to render a competent opinion concerning Lawson's mental state. At trial, Dr. Fisher testified that Lawson knew right from wrong and was not insane at the time of the offense. In the petition, Lawson asserted that Dr. Fisher, after being provided with all the requisite information, including Payton's pretrial statements, "has now concluded" that had he been provided all this information, it "would have made a difference with respect to his diagnosis." Lawson further argued that the state's failure to provide all relevant information to Dr. Fisher constituted prosecutorial misconduct.

{¶ 61} In this ground for relief, Lawson relied upon the testimony of Dr. Fisher that was taken during the federal habeas proceedings in 1997. Accordingly, the facts which form the basis for this ground of relief have been available to Lawson since that time. Lawson has therefore failed to show that he was unavoidably prevented from discovering this information. *See* R.C. 2953.23. Moreover, Lawson relied upon this same testimony in his second postconviction relief petition wherein he asserted he was ineligible for the death penalty as he is mentally retarded. Consequently, Lawson could have and should raised this claim as to Dr. Fisher's "new" opinion regarding Lawson's insanity in his second petition for postconviction relief. As mentioned above, res judicata also bars piecemeal postconviction relief petitions. *See Johnson*, 2013-Ohio-1398, ¶ 48. Accordingly, we find the trial court did not err in denying this claim for relief.

### 8. Twelfth and Thirteenth Grounds for Relief

{¶ 62} In his twelfth and thirteenth grounds for relief, Lawson asserted he was denied effective assistance of counsel during trial and at mitigation. Specifically, Lawson argues his trial counsel was ineffective in failing to: (1) have Lawson's competency to stand trial evaluated; (2) file a motion to suppress; (3) interview certain witnesses, including Payton; (4) retain a psychologist and neuropsychologist; (5) conduct a reasonable and complete

mitigation investigation; and (6) make certain objections to the admission of evidence.

{¶ 63} Again, we find these claims are barred by the doctrine of res judicata as Lawson could have raised these ineffective assistance of counsel claims during his direct appeal. *See Wagers*, 2012-Ohio-2258 at ¶ 10; *Kent*, 2013-Ohio-5090 at ¶ 19. These issues could have been determined without resort to evidence outside the record. *See Lawson III* at 313-316. In fact, in *Lawson III*, we affirmed the trial court's finding that Lawson's claims of ineffective assistance of counsel were barred by res judicata. *Lawson III* at 316. Lawson has failed to present any new evidence outside the record which he was unavoidably prevented from discovering which would now support his claims for relief. *See* R.C. 2953.23. Accordingly, the trial court did not err in denying Lawson's petition as to his twelfth and thirteenth grounds for relief.

### 9. Fourteenth Ground for Relief

{¶ 64} In his fourteenth ground for relief, Lawson argued his convictions and sentences are void or voidable because the trial court permitted FBI Special Agent Watson to testify regarding the out of court statements made by the Paytons in violation of his rights under the confrontation clause.

{¶ 65} This claim for relief also has no merit as it is barred by the doctrine of res judicata. The evidence admitted at trial, including Agent Watson's testimony as to the statements made by the Paytons was well known to Lawson and his appellate counsel. Therefore, he could have and should have appealed this issue during his direct appeal. *Kent* at ¶ 19. Moreover, as it was well known to both Lawson and his various attorneys that this evidence was admitted at trial, Lawson has also failed to demonstrate, as required under R.C. 2953.23 that he was unavoidably prevented from discovering the facts upon which he relies to present this claim for relief. Accordingly, the trial court did not err in denying relief as to Lawson's fourteenth ground for relief.

### 10. Fifteenth Ground for Relief

{¶ 66} In his fifteenth ground for relief, Lawson asserts that his convictions and sentences are void or voidable because the trial court admitted into evidence custodial statements that were taken in violation of his Fifth Amendment *Miranda* rights.

{¶ 67} Again, the fact that trial counsel failed to file a motion to suppress these statements and that the statements were later admitted at Lawson's trial is not new evidence; rather, it was well known to Lawson and his appellate counsel. As the evidence necessary to challenge this alleged constitutional right violation existed based on the original record at trial, we find this argument also is barred by res judicata. *See Lawson III*, 103 Ohio App.3d at 315. Lawson should have and could have challenged the admission of his custodial statements on direct appeal. Moreover, it appears Lawson indeed asserted *Miranda* violations within his first petition for postconviction relief. Again, the trial court denied the petition, and we affirmed. *Lawson III*, 103 Ohio App.3d at 316. Lawson has failed to provide any new evidence outside the original trial record or further show that he was unavoidably prevented from discovering such evidence. *See* R.C. 2953.23. Based on the foregoing, the trial court did not err in denying Lawson relief as to his fifteenth ground for relief.

### 11. Sixteenth Ground for Relief

{¶ 68} In his final ground for relief, Lawson argues that that the cumulative effect of all the grounds for relief contained in the instant petition and the facts relied upon for those grounds for relief demonstrate that his constitutional rights have been violated. According to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Hoop*, 12th Dist. Brown No. CA2011-07-015, 2012-Ohio-992, ¶ 58, quoting *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). The doctrine of cumulative error is not applicable

unless there are multiple instances of harmless error. *Garner* at 64.

{¶ 69} Having previously found no error as set forth in Lawson's substantive grounds for relief, we find no cumulative error. Accordingly, the trial court did not err in denying Lawson's sixteenth ground for relief.

### E. Evidentiary Hearing

{¶ 70} Within his second through sixteenth grounds for relief, Lawson alternatively argued that the trial court erred by not granting him an evidentiary hearing to develop the facts related to each of his claims for relief. We find no merit to this argument.

{¶ 71} "An evidentiary hearing is not automatically guaranteed each time a defendant makes a petition for postconviction relief." *State v. Piesciuk*, 12th Dist. Butler No. CA2013-01-011, 2013-Ohio-3879, ¶ 63. In order to be entitled to a hearing, "the petitioner must show that there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records in the case." *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 11; *see also* R.C. 2953.21(C). The burden is on the petitioner to show that the claimed errors resulted in prejudice before a hearing on a postconviction relief petition is warranted. *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 164.

{¶ 72} After reviewing the trial court's 19-page opinion, it is apparent that the trial court was thorough in its analysis and did not abuse its discretion in denying Lawson's postconviction petition without holding a hearing. The trial court did not find substantive facts supporting a claim for relief on constitutional grounds. For the reasons set forth above, we find that the record supports the trial court's conclusions. Accordingly, the trial court did not err in denying the petition without first holding a hearing.

{¶ 73} In conclusion, we find no error in the trial court's denial of each of the grounds for relief in Lawson's successive petition for postconviction relief, and further find no abuse of

discretion in the trial court's denial of a hearing thereon. Lawson's second assignment of error is therefore overruled.

### III. Conclusion

{¶ 74} After reviewing each of the claimed grounds for relief, we conclude Lawson's petition failed to satisfy the jurisdictional requirements of R.C. 2953.23. The petition does not rely on new evidence and Lawson does not argue that he was unavoidably prevented from discovering the facts upon which he had to rely to present his current claims for relief. Lawson also did not demonstrate that the petition was based on a new federal or state right that has been recognized by the United States Supreme Court. Moreover, Lawson failed to show by clear and convincing evidence that, but for any of the alleged constitutional errors at trial, no reasonable fact-finder would have found him guilty of aggravated murder, or found him eligible for a death sentence. R.C. 2953.23(A)(2). Thus, Lawson failed to demonstrate the criteria set forth in R.C. 2953.23, such that the trial court should have entertained his petition for postconviction relief. Based on the foregoing, we find the trial court did not err in denying his fourth petition for postconviction relief.

{¶ 75} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.