[Cite as *State v. Worthington*, 2015-Ohio-3173.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2014-12-022 |
| | : | O P I N I O N |
| - vs - | | 8/10/2015 |
| | : | |
| ALLEN ROSS WORTHINGTON, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2007-CR-2017


Jessica A. Little, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for plaintiff-appellee

Barney DeBrosse, LLC, Derek A. DeBrosse, 503 South Front Street, Suite 240B, Columbus, Ohio 43215, for defendant-appellant


**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Allen Ross Worthington, appeals from a decision of the Brown County Court of Common Pleas denying his motion to withdraw his guilty plea and motion for postconviction relief. For the reasons set forth below, we affirm.

**I. FACTS**

{¶ 2} In January 2007, appellant was indicted on seven counts of rape in violation of

R.C. 2907.02(A)(1)(b), felonies of the first degree, and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree. Each of the rape counts were accompanied by specifications that the victims, two females, were less than 10 years old at the time of the offenses and that they were compelled to submit by force or the threat of force. The victims, A.L. and T.L., were, respectively, five and six years old at the time of the alleged incidents. The girls, along with their mother, S.L., had lived with appellant while appellant engaged in an extramarital affair with S.L.

{¶ 3} Following his indictment, appellant was appointed counsel. In March 2007, appellant, his counsel, and the state entered into a stipulated polygraph agreement, which was approved by the court and filed in the record. Appellant then submitted to the polygraph examination. The results of the examination indicated appellant had "lying reaction[s]" when he denied engaging in sexual activities with A.L. and T.L.

{¶ 4} On the same day appellant took the polygraph examination, he wrote a letter of apology. In his handwritten letter, appellant stated the following:

> I apologize for haveing eany sexual contack with the grils T.L + A.L. while under the infulence of alcohol. I never went to that house meaning to have sexual contact with eany one. I may have had hand to skin contact with T.L. while under the infulence. Never tryed to hurt eather of them. I'm sorry for haveing eany contact with them even if it was hand to skin. [sic]

{¶ 5} Thereafter, in April 2007, the trial court held a hearing pursuant to Evid.R. 601(A) to determine the competency of A.L. and T.L. to testify as witnesses at trial. Appellant and his counsel were present at the hearing and defense counsel participated in the court's interview of the girls. In June 2007, the trial court issued an entry finding that A.L. and T.L., then six and seven years old, respectively, were competent to testify.

{¶ 6} On July 23, 2007, appellant, with his counsel present, entered a guilty plea to two counts of rape in violation of R.C. 2907.02(A)(1)(b), one for each victim, with the

specification that the victims were less than ten years old at the time of the offenses. In exchange for appellant's guilty plea, the state dismissed the force specifications, dismissed the remaining five counts of rape and two counts of gross sexual imposition, and recommended that appellant's sentences be run concurrently. The trial court accepted appellant's guilty plea, sentenced him to concurrent terms of life in prison, and classified him as a sexual predator and an aggravated sexually-oriented offender. Appellant did not appeal from his conviction or sentence.

{¶ 7} On September 18, 2014, more than seven years after entering his guilty plea, appellant filed a motion to withdraw his guilty plea or, alternatively, motion for postconviction relief. In his motion, appellant argued there was newly discovered evidence demonstrating a manifest injustice in the original proceeding. Appellant asserted the two victims, now 13 and 15 years old, had recanted their allegations of sexual abuse and a 2013 analysis of the polygraph examination he underwent in 2007 was conducted that "dismantle[d] the effectiveness of the polygraph results" and his subsequent apology letter. Appellant contended these new pieces of evidence, combined with evidence that his trial counsel provided ineffective assistance by doing "very little by way of trial preparation and pre-trial actions," failing to explain the ramifications of entering a guilty plea, and failing to adequately educate or prepare him for the polygraph examination, demonstrated that his plea should be withdrawn pursuant to Crim.R. 32.1 or, alternatively, his motion for postconviction relief should be granted pursuant to R.C. 2953.21.

{¶ 8} In support of his motion, appellant attached a variety of exhibits, including the Forensic Interview Report from his 2007 polygraph examination, a September 2013 report by Leo Gloege, a certified polygraphist who analyzed the 2007 polygraph examination and found issues with the manner in which the examination was conducted, affidavits by eight of appellant's family members and friends who either claimed to have heard A.L. and T.L.

recant their allegations of abuse or who attested that they themselves, or their children, had never been abused by appellant when left in his care, appellant's own affidavit, and copies of children's drawings and writings.[1] The children's drawings and writings were not attached to an affidavit or otherwise authenticated. Appellant claimed that the drawings and writings had been made by A.L. and T.L. while they underwent counseling. The writings contain the following statements, which appellant contended demonstrated his innocence:

> I was worried when my mom told me she would kill me if I told anyone that I lied about my uncle Allan [sic].
>
> * * *
>
> My mom said she would kill me.
>
> * * *
>
> Lie started when 6 or 7 years old. Close to my Uncle Allen. She told me to say he raped and would kill me if he saw me again. Told the court, Aunt Edna, Aunt Brenda.

These writings were not signed by either A.L. or T.L., and their names do not appear anywhere on the documents.

{¶ 9} The state filed a memorandum in opposition to appellant's motion, arguing appellant had knowingly, intelligently, and voluntarily entered his guilty plea after receiving effective representation by his trial counsel. The state further argued there was no "new evidence" entitling appellant to postconviction relief as the victims had not recanted their allegations of sexual abuse and the polygraph examination was appropriately administered. In support of its argument, the state submitted the affidavit of William C. Lewis II, the

---

1. Many of the individuals who executed an affidavit regarding the victims' alleged recantations are, in addition to being related to appellant, also related to the victims in some fashion. From the record, it is unclear the exact nature of appellant's familial relationship to the victims, to the victims' mother, or to the eight individuals submitting affidavits.

polygraph examiner who administered the March 2007 examination, and Andy Baughey, a Special Deputy Sheriff with the Brown County Department of Job and Family Services. Baughey attested he interviewed A.L. and T.L. on October 8, 2014, and both girls denied recanting and affirmed their original statements that appellant engaged in sexual activity with them.

{¶ 10} On December 14, 2014, the trial court denied appellant's motion to withdraw his guilty plea and his motion for postconviction relief without holding a hearing. The trial court concluded appellant failed to establish the existence of a manifest injustice entitling him to withdraw his guilty plea, he had received effective representation by his trial counsel, and he was not entitled to postconviction relief. Appellant timely appealed, raising four assignments of error. For ease of discussion, we will address appellant's second, third, and fourth assignments of error together.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED BY NOT FINDING THAT COUNSEL WAS INEFFECTIVE RESULTING IN A MANIFEST INJUSTICE.

{¶ 13} In his first assignment of error, appellant argues the trial court erred in denying his motion to withdraw his guilty plea as the evidence he submitted in support of his motion demonstrated that trial counsel provided ineffective representation. Specifically, appellant contends trial counsel was ineffective in the following ways: (1) trial counsel failed to investigate appellant's ability to take a polygraph examination given his history of alcohol abuse and his possible use of prescribed medication; (2) trial counsel did not have appellant submit to a "pre-polygraph examination;" (3) trial counsel failed to properly educate appellant as to the "legitimacy of polygraphs in court and what it meant to stipulate to a polygraph

examination;" (4) trial counsel incorrectly informed appellant of the ramifications of the pending plea offer, thereby "leading him to believe he would be released sooner rather than later;" and (5) trial counsel "walked * * * through the motions" of representation and "conducted no additional investigation [or] filed no pre-trial motions."

{¶ 14} Pursuant to Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A defendant who seeks to withdraw a plea after the imposition of a sentence has the burden of establishing the existence of a manifest injustice. *State v. Williams*, 12th Dist. Clermont No. CA2012-08-060, 2013-Ohio-1387, ¶ 11, citing *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. A manifest injustice is defined as "a fundamental flaw in the proceedings that results in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Hobbs*, 12th Dist. Warren No. CA2012-11-117, 2013-Ohio-3089, ¶ 9. "The requirement of demonstrating a manifest injustice is designed to discourage a defendant from pleading guilty to test the weight of the potential reprisal, and later attempting to withdraw the plea if the sentence was unexpectedly severe." *Williams* at ¶ 13. This sets forth an extremely high standard that is allowable only in extraordinary cases. *State v. Sturgill*, 12th Dist. Clermont No. CA2014-09-066, 2015-Ohio-1933, ¶ 9.

{¶ 15} "A trial court's decision regarding a post-sentence motion to withdraw a guilty plea is reviewed on appeal under an abuse of discretion standard." *State v. Rose*, 12th Dist. Butler CA2010-03-059, 2010-Ohio-5669, ¶ 15. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *State v. Robinson*, 12th Dist. Butler No. CA2013-05-085, 2013-Ohio-5672, ¶ 14.

{¶ 16} Ineffective assistance of counsel is a proper basis for seeking a post-sentence withdrawal of a guilty plea. *Id.* at ¶ 22; *Sturgill* at ¶ 12. When an alleged error underlying a motion to withdraw a guilty plea is ineffective assistance of counsel, the defendant must show (1) his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *Id.*; *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. *Robinson* at ¶ 22; *Sturgill* at ¶ 12.

1. Polygraph Examination

{¶ 17} As set forth above, in support of his claim of ineffective assistance, appellant raised a variety of issues surrounding the representation he received at the time he took the 2007 polygraph examination. In support of his arguments that trial counsel failed to properly advise or prepare him for the polygraph examination, appellant submitted an affidavit in which he attested that "[a]t no time did my attorney inform me of the risks associated with the polygraph examination or the historical inaccuracies with such examinations." He further attested he had been prescribed Elavil and Vicodin around the time of the polygraph, and that taking such medication made him feel "mentally and physically impaired."

{¶ 18} Appellant's arguments regarding the representation he received with respect to the 2007 polygraph examination are barred by the doctrine of res judicata. As we have previously held, "claims submitted in support of a Crim.R. 32.1 motion to withdraw plea that could have been raised on direct appeal, but were not raised [on] direct appeal are barred by res judicata." *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 11. In this case, appellant entered into the stipulated polygraph agreement and underwent the polygraph examination in March 2007. Months later, in July 2007, he entered a guilty plea, was convicted, and sentenced. Appellant's arguments stem from counsel's performance

- 7 -

leading up to his guilty plea and the imposition of the court's sentence. Because these arguments could have been raised on direct appeal, we find that appellant's arguments are now barred by res judicata. *See Hendrix* at ¶ 11-12.

{¶ 19} Even considering the merits of appellant's arguments, we find them to be without merit. "When a defendant agrees to undergo a polygraph test, presumably he knows whether he is telling the truth and is willing to assume the risk of error. It is completely within his knowledge and control whether to make the decision." *State v. Lascola*, 61 Ohio App.3d 228, 234 (10th Dist.1988). Here, appellant agreed to the polygraph examination after being fully advised of his constitutional and statutory rights.[2] Appellant made the informed choice to stipulate to the admission of the results of the examination and there is no indication that he was pressured to do so by his counsel. *See State v. Scott*, 9th Dist. Lorain No. Civ.A. 04CA008503, 2004-Ohio-6746, ¶ 10; *State v. Fisk*, 10th Dist. Franklin No. 01AP-1193, 2002-Ohio-2776, ¶ 74-75.

{¶ 20} Additionally, the record reflects that appellant made the decision to take the polygraph examination even after being advised that the results of the examination could be affected by any medications he was taking or any conditions from which he suffered. The stipulated polygraph agreement provided that appellant was under a duty to disclose any "known conditions which might affect the reliability of testing," and "concealment of medication used by the Defendant shall be regarded as willful breach of this [agreement]." The agreement further provided that the polygraph administrator had the right to "refuse to administer the test, if in the judgment of such person the Defendant [was] not deemed a proper subject for examination at the time of examination, (e.g. the Defendant [was] or

---

2. The Stipulated Polygraph Agreement executed by appellant specifically provided that "[p]rior to signing this entry, and agreeing thereby to submit to this 'polygraph testing,' the Defendant has been fully advised of his Constitutional and statutory rights, and by signing this entry, he knowingly, intelligently, and voluntarily waives his right to remain silent and his right to seek advice of counsel during any stage of the administration of the polygraph test procedure."

appear[ed] to be under the influence of a drug which might distort test results)." Appellant cannot now argue his trial counsel's performance was deficient for failing to inquire into his alcohol and medication usage when the record demonstrates that appellant was specifically advised that such usage was not only relevant, but was required to be disclosed by him prior to the examination.

{¶ 21} Finally we note that it is not the role of the appellate court to second guess the strategic decisions of trial counsel. *State v. Lloyd,* 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, ¶ 61. If trial counsel believed that appellant was telling the truth about his innocence, then the decision to stipulate to the polygraph examination may have been advantageous. *State v. Jackson*, 7th Dist. Mahoning No. 98 CA 207, 2000 WL 1114560, * 4 (July 28, 2000). *See also State v. Carter*, 10th Dist. Franklin No. 00AP-1365, 2001 WL 893529, * 4 (Aug. 9, 2001) ("a defense attorney's decision surrounding * * * polygraph tests falls within the realm of trial tactics"). The fact that the results of the polygraph exam were not favorable to appellant does not mean that trial counsel's performance was deficient. "A reviewing court cannot use the benefit of hindsight in determining whether a defendant received effective assistance of counsel." *Jackson* at * 4.

{¶ 22} Appellant, therefore, has not demonstrated that trial counsel provided deficient representation with respect to the 2007 polygraph examination.

2. Explanation of Plea

{¶ 23} Appellant also argues that trial counsel failed to adequately explain the ramifications of his guilty plea. In his affidavit, appellant attested that "my attorney led me to believe that my only chance of avoiding a life sentence was to enter a guilty plea to the charges of rape which I subsequently did based solely on his advice. His exact words to me were '[e]nter a plea of guilty unless you want to die an old man in prison.'" Appellant also argues that he was led to believe that by entering the plea, he would be released "sooner

rather than later." He does not, however, explain what he means by "sooner rather than later."

{¶ 24} As we have consistently stated, trial counsel's advice to take a plea deal is not ineffective assistance of counsel. *Sturgill*, 2015-Ohio-1933 at ¶ 20; *Robinson*, 2013-Ohio-5672 at ¶ 23. Appellant was facing seven rape counts that contained a force or threat of force specification. If convicted of these offenses and specifications, appellant faced multiple prison sentences of life without the possibility of parole. However, if appellant accepted the negotiated plea deal, the force specifications would be dropped, five other rape counts and two counts of gross sexual imposition would be dropped, and the state would agree to recommend concurrent sentences. Trial counsel's performance was not deficient for advising appellant of the possible worst case scenario or for making recommendations to appellant on how to proceed. *See id.*; *Sturgill* at ¶ 20. This is particularly true here, considering that appellant acknowledged as part of his written plea form that he was "satisfied with [his] attorney's advice and competence."

3. Preparation and Participation

{¶ 25} Appellant also contends trial counsel was ineffective because he merely "walked * * * through the motions" of representation without actually conducting an investigation into the charges or filing any pretrial motions. We find no merit to appellant's argument. We agree with the trial court that trial counsel was an active participant in appellant's case and he provided effective representation. The record reflects that trial counsel filed a discovery demand, participated in the competency hearing for the victims, and negotiated a favorable plea deal for appellant that resulted in the dismissal of seven charges and the imposition of concurrent, rather than consecutive, life sentences.

{¶ 26} Accordingly, for the reasons set forth above, we conclude that appellant received effective assistance by his trial counsel. The trial court, therefore, did not abuse its

discretion in denying appellant's Crim.R. 32.1 motion on the basis of ineffective assistance of counsel.

{¶ 27} Appellant's first assignment of error is overruled.

**B. Denial of Motions without a Hearing**

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED IN NOT FINDING A MANIFEST INJUSTICE THROUGH NEWLY DISCOVERED EVIDENCE AS IT FAILED TO PROPERLY CONSIDER THE EXHIBITS PRESENTED IN APPELLANT'S MOTION TO SET ASIDE PLEA AND FOR POST-CONVICTION RELIEF.

{¶ 30} Assignment of Error No. 3:

{¶ 31} THE TRIAL COURT ERRED BY FINDING APPELLANT DID NOT MEET HIS BURDEN UNDER THE POST-CONVICTION RELIEF STATUTE.

{¶ 32} Assignment of Error No. 4:

{¶ 33} THE TRIAL COURT ERRED BY NOT GRANTING A HEARING ON THE APPELLANT'S MOTION TO SET ASIDE PLEA AND FOR POST-CONVICTION RELIEF.

{¶ 34} In his second and third assignments of error, appellant argues the trial court failed to properly weigh the "new evidence" submitted in support of his motion to withdraw his guilty plea and his motion for postconviction relief. Appellant contends the trial court did not give due deference to the affidavits submitted in support of his motions and that evidence of the victims' recantations entitles him to relief from his conviction. He further argues in his fourth assignment of error that he was entitled to an evidentiary hearing on his motions.

1. Motion to Withdraw Guilty Plea

{¶ 35} As previously stated, a defendant seeking to withdraw a plea after the imposition of a sentence bears the burden of establishing the existence of a manifest injustice. *Williams*, 2013-Ohio-1387 at ¶ 11. Not every defendant who files a motion to

withdraw his guilty plea is entitled to a hearing on the motion. *See State v. Degaro,* 12th Dist. Butler No. CA2008-09-227, 2009-Ohio-2966, ¶ 13 ("A trial court need not hold an evidentiary hearing on every post-sentence motion to withdraw a guilty plea"). "A defendant must establish a reasonable likelihood that a withdrawal of his plea is necessary to correct a manifest injustice before a court must hold an evidentiary hearing on his motion." *State v. Williams*, 12th Dist. Warren No. CA2009-03-032, 2009-Ohio-6240, ¶ 14.

**{¶ 36}** Here, appellant contends that his conviction resulted in a manifest injustice given the "new evidence" that emerged, consisting of the victims' recantations and the affidavits of his family members who claim to have heard the victims recant. The victims' alleged recantations are supposedly set forth in the children's writings and drawings attached to appellant's motion. According to appellant's brief, these writings contain "statements made by the victims to their Brown County appointed counselor, Samantha Wieshan, L.I.S.W." Wieshan, however, did not submit an affidavit authenticating the writings or indicating that the children had recanted their allegations of abuse. In fact, the writings were not attached, identified, or authenticated by any individual submitting an affidavit.

**{¶ 37}** With respect to the affidavits submitted by appellant's family members and friends, the following people made these statements:

> **Donald Inman:** After the girls started living with [me], I heard them state that their mother had made them lie in court that Allen Worthington had molested them. The girls said Allen never hurt them and was always good to them. They said they felt bad for what they had done.
>
> **Edna Inman:** I had temporary custody of [T.L. and A.L.] from September 2010 to September 2011 * * *. After the girls started living with me, they told me * * * that their mother made them lie in court that Allen Worthington had molested them. They said Allen Worthington was always very good to them and never did anything wrong to them.
>
> **Saralene Massman:** I know what the accusations against Allen Worthington were. I also know that Allen Worthington babysat an

incredible number of young girls in our family without incident. He babysat me and [S.L.] when we were teenagers, and never acted inappropriate in any way towards us. He babysat my daughters, Desirea and Mariah as well, also without incident. He watched over Roxann, Edna's daughter, also without incident. He watched over Roxann's three daughters and my brother's two kids * * * without ever doing anything even remotely inappropriate to or with them. As such I found the accusations against Allen hard to believe. That doubt obviously grew when I heard * * * [T.L. say to my boyfriend on one occasion, "if you touch me I'll holler rape."]

**Alex Worthington:** I was shocked when my father was accused in 2007 of molesting * * * [T.L. and A.L.]. I never saw my father act inappropriate with either of these girls or any other children. * * * T.L. and A.L. told me [toward the end of summer 2011] that their mother had made them lie about my father doing things to them. They said they were very sorry for what they had done. Both the girls were crying when they said this, and I told them I forgave them.

**Cleresa Kilgore:** [S.L.] and her daughters, [T.L. and A.L.] lived with me for about a month in late 2011. * * * During the time they lived with me, [T.L.] told me that [S.L.] had made her tell lies in court about Allen Worthington molesting them when he did not. Before [T.L.] could say anything more, [A.L.] told her to stop talking about it. She did not contradict what [T.L.] said, however.

**Alexis Collins:** During the time [T.L. and A.L.] lived with Edna [Inman], they both told me that they their [sic] mother had made them lie in court that Allen Worthington had molested them. They said Allen had never hurt them and they felt bad for saying that he had.

**Desirea Fancher:** Allen Worthington * * * often babysat me as I was growing up. * * * Allen never tried to do anything to me and I always felt safe around him. When I discussed the allegations against Allen with [T.L. and A.L.] while I was living with them, they both told me that their mother had forced them to lie about him raping them. They said they felt bad about what they had done but that they were afraid of ever going against their mom and telling the truth.

**Roxann Webb:** When I was growing up, I slept over with Allen Worthington. * * * Despite being left alone with Allen often, he never acted inappropriately or made me feel uncomfortable in any way. Later, when I had children of my own, Allen Worthington watched two of my girls. * * * When I learned of the accusations against Allen Worthington, I asked both [my girls] if

he had ever made them feel uncomfortable or touched them in an inappropriate way. Both responded that he had never acted in that way towards them.

{¶ 38} After examining the documents and affidavits attached to appellant's motion and the state's memorandum in opposition, the trial court stated that "[t]here are no statements from the victims themselves." The court noted that the "affidavits contain hearsay at best from both sides as the States [sic] investigator signed an affidavit stating that he personally spoke to the victims and that they did not recant but affirmed that the charges were true. The Court has nothing more than competing and conflicting hearsay with respect to the alleged recantations from the victims."

{¶ 39} "[I]t is well-established that the 'good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved' by the trial court." *Robinson*, 2013-Ohio-5672, ¶ 17, quoting *State v. McGlosson*, 12th Dist. Butler CA2012-03-057, 2013-Ohio-774, ¶ 32. Numerous "Ohio courts have * * * held that affidavits from interested parties such as defendants, co-defendants, and family members are self-serving and may be discounted" by the trial court. *Id.* The trial court, therefore, was entitled to determine that the affidavits submitted by appellant's family members and friends lacked sufficient credibility. This is especially true here, as appellant did not submit affidavits from the victims themselves, even though A.L. and T.L. were, respectively, 13 and 15 years old at the time appellant filed his motion to withdraw his guilty plea. *See State v. Garn*, 5th Dist. Richland No. 02 CA 45, 2003-Ohio-820, ¶ 31 ("Had the victim recanted her allegations of sexual abuse, appellant should have attached the victim's affidavit indicating so"). Appellant also did not submit an affidavit from an uninterested party, such as Wieshan, who appellant believed had heard or observed the girls recant their abuse allegations.

{¶ 40} Recantations of prior witness statements must be examined with the "utmost suspicion." *Robinson* at ¶ 18, citing *State v. Linder*, 8th Dist. Cuyahoga No. 99350, 2013-

- 14 -

Ohio-5018, ¶ 14. Any delay in the disclosure of a witness's recantation weighs against the believability and truthfulness of the recantation. *Id.* at ¶ 19. "An undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against granting of the motion." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph three of the syllabus. *See also State v. Resendiz*, 12th Dist. Preble No. CA2009-04-012, 2009-Ohio-6177, ¶ 22. Here, A.L. and T.L. supposedly recanted the abuse allegations in 2011 to numerous members of appellant's family, and these family members executed affidavits in early 2012 and 2013. Yet, appellant did not file his motion to withdraw his guilty plea until September 2014. This length of time clearly militates against the granting of appellant's motion.

{¶ 41} Further, appellant's assertion that the victims have recanted and that he is innocent of any wrongdoing must be weighed against the fact that he previously admitted to committing the rapes by pleading guilty. "A defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, syllabus. In other words, by entering a guilty plea, appellant not only stated that he did the acts described in the indictment, but he also admitted guilt of the substantive crimes. *Robinson* at ¶ 20; *State v. Fuller*, 12th Dist. Butler No. CA2008-09-240, 2009-Ohio-5068, ¶ 105. As the trial court noted, appellant admitted to having sexual conduct with the victims "in open Court of his own free will and there is no reason to conclude that he was less than honest when he accepted responsibility for his actions" seven years ago.[3]

---

3. Appellant also contends he is entitled to withdraw his guilty plea because the evidence he submitted in support of his motion "meets the standards for a new trial" as set forth in *State v. Sneed*, 8th Dist. Cuyahoga No. 80902, 2002-Ohio-6502. We disagree. As discussed above, the "new evidence" appellant submitted must be weighed against his prior admission that he committed the rape offenses. Appellant was not convicted after a trial. Rather, he pled guilty and admitted to committing the underlying substantive offenses.

{¶ 42} Accordingly, having reviewed the record, we conclude that the trial court properly considered and weighed the evidence submitted in support of appellant's motion to withdraw his guilty plea before denying said motion without holding an evidentiary hearing. Appellant failed to establish a reasonable likelihood that a withdrawal of his plea was necessary to correct a manifest injustice. The trial court, therefore, did not abuse its discretion in denying appellant's motion.

## 2. Motion for Postconviction Relief

{¶ 43} Appellant also contends the trial court erred in denying his motion for postconviction relief. A postconviction proceeding is not an appeal of a criminal conviction, but rather, is a collateral civil attack on a criminal judgment. *State v. Dillingham*, 12th Dist. Butler Nos. CA2012-02-037 and CA2012-02-042, 2012-Ohio-5841, ¶ 8. R.C. 2953.21 through 2953.23 set forth the means by which a convicted defendant may seek to have the trial court's judgment or sentence vacated or set aside pursuant to a petition for postconviction relief. *State v. Hibbard*, 12th Dist. Butler No. CA2013-03-051, 2014-Ohio-442, ¶ 21. R.C. 2953.21(A)(2) sets forth the general postconviction relief protocol and provides that such petitions must be filed no later than 180 days after the date on which the trial transcript is filed with the court of appeals in the direct appeal, or, if a direct appeal was not pursued, 180 days after the expiration of the time in which a direct appeal could have been filed. Former R.C. 2953.21; *Hibbard* at ¶ 21.[4]

{¶ 44} However, if a defendant fails to file his petition within the proscribed time period, R.C. 2953.23(A)(1)(a) permits a trial court to entertain the untimely petition for postconviction relief so long as the petitioner demonstrates either: (1) he was unavoidably prevented from

---

4. R.C. 2953.21 was amended by 2014 Sub.H.B. No. 663, which extended the timeframe for defendants to file their motions for postconviction relief from 180 days to 365 days. The statute did not take effect until March 23, 2015, well after appellant filed his motion for postconviction relief. Appellant's motion, therefore, is governed by former R.C. 2953.21.

discovering the facts necessary for the claim for relief; or (2) the United States Supreme Court has recognized a new federal or state right that applies retroactively to persons in the petitioner's situation and the petitioner asserts a claim based on that right. R.C. 2953.23(A)(1)(a); *State v. Kent*, 12th Dist. Preble No. CA2013-05-003, 2013-Ohio-5090, ¶ 12. If the petitioner is able to satisfy one of these threshold conditions, he must then demonstrate by clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found him guilty of the offenses of which he was convicted. R.C. 2953.23(A)(1)(b); *Hibbard* at ¶ 22.

{¶ 45} In order to be entitled to a hearing on a petition for postconviction relief, "the petitioner must show that there are substantive grounds for relief that would warrant a hearing based on the petition, the supporting affidavits, and the files and records in the case." *State v. Lawson*, 12th Dist. Clermont No. CA2013-12-093, 2014-Ohio-3554, ¶ 71. *See also* R.C. 2953.21(C). "A trial court's decision to summarily deny a postconviction petition without holding an evidentiary hearing pursuant to R.C. 2953.21(C) will not be reversed absent an abuse of discretion." *State v. Simon*, 12th Dist. Butler No. CA2014-12-255, 2015-Ohio-2989, ¶ 11.

{¶ 46} In denying appellant's motion for postconviction relief, the trial court found that the motion was untimely and that "neither of those factors [set forth in R.C. 2953.23(A)(1)(a) and (A)(1)(b)] are present." Appellant contends that the trial court erred when it denied his motion as he demonstrated that he was unavoidably prevented from discovering the victims recantations until after the 180 days set forth in R.C. 2953.21(A)(2) had expired. He also argues that "no reasonable fact finder would have found [him] guilty" given the "written and credible recantations" he attached to his motion.

{¶ 47} After a thorough review of the record, we find that the trial court did not abuse its discretion in denying appellant's motion for postconviction relief. Although the victims'

alleged recantations were not known to appellant until sometime after the period of time prescribed in R.C. 2953.21(A)(2) had expired, appellant has failed to show that the purported recantations were credible. As required by R.C. 2953.23(A)(1)(b), he further failed to show by clear and convincing evidence that but for a constitutional error at trial, no reasonable factfinder would have found him guilty of the rape offenses.

{¶ 48} "[A] trial court may under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant." *State v. Calhoun*, 86 Ohio St.3d 279, 284 (1999). In determining the credibility of a supporting affidavit in a postconviction relief proceeding, the trial court should consider all relevant factors, including: (1) whether the judge reviewing the petition also presided at the trial; (2) whether multiple affidavits contain nearly identical language or otherwise appear to have been drafted by the same person; (3) whether the affidavits contain or rely on hearsay; (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts; and (5) whether the affidavits contradict evidence proffered by the defense at trial. *Id.* at 285. "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Id.*

{¶ 49} Here, appellant failed to present credible evidence that the victims recanted their statements. Appellant did not submit affidavits from the victims themselves or from uninterested parties. Rather, he attempted to demonstrate that the victims recanted by attaching unauthenticated children's writings and drawings and affidavits from his family members and friends. Many of the affidavits contain hearsay and appear to have been drafted by the same person. Given these considerations, we cannot say that the trial court erred in concluding that the affidavits were not credible.

{¶ 50} Additionally, although appellant contends that there is no evidence to support

his conviction outside of the victims' "recanted statements," the record demonstrates otherwise. Appellant failed the stipulated polygraph examination and hand-wrote a letter of apology, wherein he apologized for having "eany sexual contack [sic]" with the victims. Further, and of utmost importance, appellant entered a guilty plea admitting he did the acts described in the indictment and that he was guilty of the substantive crimes. *See Robinson*, 2013-Ohio-5672 at ¶ 20; *Fuller*, 2009-Ohio-5068 at ¶ 105. While appellant now denies any wrongdoing and claims to be innocent of the crimes for which he was convicted, his "claim of actual innocence is not itself a constitutional claim, nor does it constitute a substantive ground for postconviction relief." *State v. Hines*, 8th Dist. Cuyahoga No. 89848, 2008-Ohio-1927, ¶ 24. *See also State v. Watson*, 126 Ohio App.3d 316, 323 (12th Dist.1998).

{¶ 51} Appellant also argues that his motion for postconviction relief should have been granted because he was denied his constitutional right to effective assistance of counsel. Appellant once again argues his trial counsel was ineffective for doing "very little by way of trial preparation and pre-trial actions," for failing to explain the ramifications of entering a guilty plea, and for failing to adequately educate or prepare him for the polygraph examination. However, as set forth in our resolution of appellant's first assignment of error, appellant has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. *See Sturgill*, 2015-Ohio-1933, ¶ 12; *Strickland*, 466 U.S. at 687-688. Ineffective assistance of counsel, therefore, cannot serve as the substantive ground for appellant's motion for postconviction relief. See R.C. 2953.23(A)(1)(b); *Simon*, 2015-Ohio-2989 at ¶ 17.

{¶ 52} Accordingly, having reviewed the record, we conclude that the trial court did not abuse its discretion in denying appellant's motion for postconviction relief without first holding an evidentiary hearing. The trial court properly considered and weighed the evidence submitted in support of appellant's motion before denying said motion. Because appellant

failed to set forth substantive facts supporting a claim for relief on constitutional grounds, we find that the trial court did not abuse its discretion in denying appellant's motion for postconviction relief.

{¶ 53} Appellant's second, third, and fourth assignments of error are, therefore, overruled.

### III. CONCLUSION

{¶ 54} For the reasons set forth above, the trial court's decision denying appellant's motion to withdraw his guilty plea and his motion for postconviction relief without holding an evidentiary hearing is affirmed.

{¶ 55} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.